[No. 4784. Decided January 2, 1904.]

## J. CLYDE HILL, *Appellant*, v. NORTHERN PACIFIC RAILWAY CO., *Respondent*.[1]

CARRIERS—LIMITING LIABILITY—CONTRACT TO CARRY FREIGHT AT REDUCED RATE—VALIDITY—PUBLIC POLICY. A contract for the transportation of household goods providing that the "released value of this shipment is agreed to be $5.00 per 100 lbs.," and releasing the company from any and all damages while in transit, except the result of collisions of trains or of cars being thrown from the track, limits the liability to said sum, and is not void as against public policy upon the principle that a common carrier can not relieve itself from its common law liability, where the undisputed testimony shows that the contract was entered into with the special understanding that the rate of freight was less than the ordinary rate, and would have been one and one-half times higher where there was no limitation of value placed upon the goods.

[1]Reported in 74 Pac. 1054.

SAME—RELEASED VALUE OF GOODS SHIPPED—CONSTRUCTION. In such a case the clause restricting the "released value" means the valuation to which the libility of the carrier is limited, and no distinction is to be made between a "released value" and the real valuation, upon the ground that it is arbitrarily fixed by the carrier, or is not calculated to approach the real value of the goods.

Appeal by plaintiff from a judgment of the superior court for Snohomish county, Denney, J., entered February 18, 1903, upon the verdict of a jury rendered by direction of the court for the amount admitted by defendant to be due. Affirmed.

*E. D. Terrill (Cooley & Horan,* of counsel), for appellant. The contract limiting the liability of the carrier to $5 per hundred pounds was void as against public policy *Georgia Pac. R. Co. v. Hughart,* 90 Ala. 36, 8 South. 62; *Alabama etc. R. Co. v. Little,* 71 Ala. 611; *Black v. Goodrich Transp. Co.,* 55 Wis. 319, 13 N. W. 244. The contract is void since the expressed consideration is the receipt of property to be transported by a common carrier. 2 Am. & Eng. Enc. Law, p. 787, (1st ed.); 6 id. pp. 750, 767 (2d ed.). There was no freedom of choice in the rates offered to appellant, and this is essential. *Atchison etc. R. Co. v. Dill,* 48 Kan. 210, 29 Pac. 148; *McFadden v. Missouri Pac. R. Co.,* 92 Mo. 343, 4 S. W. 689, 1 Am. St. 721. The stipulated value must be a fair valuation of the goods. *Louisville etc. R. Co. v. Gilbert,* 88 Tenn. 430, 12 S. W. 1018, 7 L. R. A. 162. By the weight of authority it is impossible for a carrier to limit its liability for negligence. *Milton v. Denver etc. R. Co.,* 1 Colo. 307, 29 Pac. 22; *Georgia Pac. R. Co. v. Hughart,* 90 Ala. 36, 8 South. 62; *Hull v. Chicago etc. R. Co.,* 41 Minn. 510, 43 N. W. 391; *Bank of Kentucky v. Adams Express Co.,* 93 U. S. 174, 23 L. Ed. 872. "Any and all damage" is construed not to include negligence. *Magnin*

*v. Dinsmore,* 56 N. Y. 168; *Westcott v. Fargo,* 61 N. Y. 542. The evidence showed that the car left the track and this was proof of negligence. Lawson, Presumptive Evid., 126, 129, 130; *Peterson v. Seattle Traction Co.,* 23 Wash. 615, 63 Pac. 539, 65 Pac. 543, 53 L. R. A. 586; *Browning v. Goodrich Transp. Co.,* 78 Wis. 391, 47 N. W. 428; *Wilson v. California Cent. R. Co.* 94 Cal. 166, 29 Pac. 861. The leading case of *Hart v. Pennsylvania R. Co.* 112 U. S. 331, 28 L. Ed. 717, 5 Sup. Ct. 151, is distinguished in many cases where the agreed valuation was not a fair or reasonable one. *Eells v. St. Louis R. Co.,* 52 Fed. 903; *Schwarzchild v. National S. S. Co.,* 74 Fed. 257; *Kansas City etc. R. Co. v. Simpson,* 30 Kan. 645, 2 Pac. 821, 46 Am. Rep. 104; *Pacific Express Co. v. Foley,* 46 Kan. 457, 26 Pac. 665; *Black v. Goodrich Transp. Co., supra; Rosenfeld v. Peoria etc. R. Co.,* 103 Ind. 121, 2 N. E. 344, 53 Am. Rep. 500. Such stipulations are not binding in case of negligence. *McCune v. Burlington etc. R. Co.,* 52 Iowa 600, 3 N. W. 615; *Baughman v. Louisville etc. R. Co.,* 94 Ky. 150, 21 S. W. 757; *Chicago etc. R. Co. v. Witty,* 32 Neb. 275, 49 N. W. 183; *Louisville etc. R. Co. v. Wynn,* 88 Tenn. 320, 14 S. W. 311; *Louisville etc. R. Co. v. Sowell,* 90 Tenn. 17, 15 S. W. 837; *Georgia R. etc. Co. v. Keener,* 93 Ga. 808, 21 S. E. 287; (in which the facts are identical with the facts here, and the *Hart* case is distinguished.) The clause in question was not conclusive, being, under the facts, within the rule of *Sayles v. New York etc. R. Co.,* 81 Fed. 326.

*B. S. Grosscup* and *A. G. Avery,* for respondent.

DUNBAR, J.—This is an action at law for the recovery of $278.55, the alleged true value of certain household goods shipped from Tacoma, Washington, to Everett, Washington, over respondent's railroad, and which were

lost in transit. The complaint is the ordinary complaint in such actions, alleging the value of the goods lost to be $278.55. The answer admits the shipment of the goods, but pleads that they were shipped under a certain contract in which the agreed value of the goods was $5 per hundred pounds. The contract upon which the defense is based is as follows:

"NORTHERN PACIFIC RAILWAY COMPANY
Property Release.
Tacoma, 2-7, 1902.

| Consigner and Destination. | Description of Articles. |
| --- | --- |
| J. C. Hill<br>Everett<br>Wash. | H. H. Goods<br>Released Value of this shipment<br>is agreed to be 5.00 per 100 lbs. |

In consideration of the Northern Pacific Railway Company having received the above property from R. C. Bulger consigned to J. C. Hill, to be transported from Tacoma Station to Everett Station, I hereby release said company, and each and every other Railroad over whose Lines said Goods may pass to destination, from any and all damage that may occur to said Goods arising from leakage or decay, chafing or breakage, damage by fire while in transit or at Stations, loss of damage from effect of heat or cold, or from any other cause not the result of collisions of trains, or of cars being thrown from the track while in transit. And I further guarantee to said Company or other Railroad Companies, that any and all freight or other necessary charges that may accrue as provided by tariffs of said Road or Roads, shall be paid by consignee within twenty-four hours after arrival of said Goods at destination, and in case such charges are not so paid, the said Company or Company holding said Goods may send them to warehouse, or sell them for charges, without further recourse to me. I do also release said Company from all loss or damage that may occur to any freight shipped

by me, above entered, after it has been unloaded from the cars at ———— Station on their line.

Witness, W. G. Bassett.          R. C. Bulger, Shipper."

Respondent ascertained the number of pounds shipped, and tendered $19.25, the sum which it alleged to be due under such contract. At the close of the evidence the court directed a verdict against the defendant for $19.25, upon which judgment was entered, and from which judgment this appeal is prosecuted.

The appellant contends that the contract is void for the reasons, (1) that it is contrary to public policy, and (2) that it is without consideration. It is well established, we think, by judicial decision, that a common carrier cannot relieve itself by contract from its common law liability for damages to, or loss of, goods consigned to it. But it does not seem to us that that question is involved in this case. It is simply the question of whether the carrier and shipper have a right to stipulate or agree in advance of the shipment concerning the value of the goods shipped, and it seems to us that this question was squarely decided in *Hart v. Pennsylvania R. Co.,* 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717, where it is held that where a contract of carriage signed by the shipper is fairly made with a railroad company, agreeing on a valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations.

There the contract was entitled, "Limited Liability Live-Stock Contract for United Railroads of New Jersey Divis-

ion, No. 206," and it was agreed that the shipper had delivered to the company into its safe and suitable cars, one car, 5 horses, upon the following terms and conditions: First, that the shipper was to pay freight thereon to said company at the rate of ninety-four cents per hundred pounds, and the carrier assumed liability as follows: If horses or mules, not exceeding $200 each (with some other provisions which are not pertinent). One of the horses was killed and it developed that they were race horses, and suit was brought against the company for the recovery of the alleged value of the horse at $15,000, together with damages for $3,000 for the injury to another horse, and $3,500 for the injury to still another. It was admitted by the defendant that the damages sustained by the plaintiff were equal to the full amount expressed in the bill of lading, and the court instructed the jury that the amount recovered could not exceed the value expressed in the bill of lading. This case was appealed and finally reached the supreme court of the United States, where the judgment was affirmed, the supreme court in the course of its opinion saying:

"The presumption is conclusive that, if the liability had been assumed on a valuation as great as that now alleged, a higher rate of freight would have been charged. The rate of freight is indissolubly bound up with the valuation. If the rate of freight named was the only one offered by the defendant, it was because it was a rate measured by the valuation expressed. If the valuation was fixed at that expressed, when the real value was larger, it was because the rate of freight named was measured by the low valuation. The plaintiff cannot claim a higher valuation, on the agreed rate of freight."

The same thing may be said in this case. In addition to the fact that the presumption may be considered conclusive that, if the liability had been assumed on a valua·

tion as great as that now alleged, a higher rate of freight
would have been charged, the undisputed testimony shows
that this contract was entered into with the especial un-
derstanding, and in accordance with the general rule of
the company, which was made known to all shippers, that
the contract under which the goods were shipped was a
contract for a less rate than the ordinary contract where
there was no limitation of value placed upon the goods,
the testimony showing that the ordinary shipping rates
were one and one-half times larger than the rates charged
on this limited valuation way bill.   The court stated in
that case that it was the law of that court that a common
carrier might, by special contract, limit his common law
liability, but that he could not stipulate for exemption
from the consequences of his own negligence or that of his
servants, and many cases are cited to sustain the conclu-
sion reached, and the qualification on the prohibition
against common carriers to escape the common law lia-
bility was justified in the following language:

"There is no justice in allowing the shipper to be paid
a large value for an article which he has induced the car-
rier to take at a low rate of freight on the assertion and
agreement that its value is a less sum than that claimed
after loss.   It is just to hold the shipper to his agreement,
fairly made, as to value, even where the loss or injury
has occurred through the negligence of the carrier.   The
effect of the agreement is to cheapen the freight and se-
cure the carriage, if there is no loss; and the effect of dis-
regarding the agreement, after loss, is to expose the car-
rier to a greater risk than the parties intended he should
assume.   The agreement as to value, in this case, stands
as if the carrier had asked the value of the horses, and
been told by the plaintiff the sum inserted in the contract."

And certainly that is the agreement of the value in the
case at bar, for the words, "Released value of this ship-

ment is agreed to be $5.00 per 100 lbs." are as easily un-
derstood to be a valuation to which the liability of the
company is limited as was the agreement in the case
under discussion by the supreme court of the United
States. The limitation as to value when fairly agreed
upon, it seems to us, can work no injury to either party.
If the goods are successfully transported, the shipper is
benefitted by the agreement which he entered into; if
they are lost, the carrier is benefitted by such agreement;
and, as said by the court in the Hart case:

"There is no violation of public policy; on the contrary
it would be unjust and unreasonable and would be repug-
nant to the soundest principles of fair dealing and of the
freedom of contracting, and thus in conflict with public
policy, if a shipper should be allowed to reap the benefit
of the contract if there is no loss, and to repudiate it in
case of loss."

It is useless to enter into an analysis of all the cases
on this subject. A great majority of the cases are collated
in the case we have just mentioned, and are ably analyzed,
and the law announced in that case has been recognized
in nearly all the jurisdictions in the United States as the
established law on this subject. It is asserted in the reply
brief of the appellant that he does not dispute the rule an-
nounced in that case, but that the courts, while recognizing
the rule therein laid down, have almost as universally drawn
a sharp distinction between a case where there was an agreed
valuation and the case where the value was arbitrarily
fixed by the carrier, or where the value inserted was a re-
leased valuation, not calculated to be or to approach the
real value of the goods. An examination of the cases
cited we do not think sustains this contention, and even
where there has been an attempt to make this distinction
it has been in principle a failure. The contract establish-

ing the released valuation must be construed to embrace the real valuation. At all events it is the valuation agreed upon between the shipper and the carrier as a basis of charges for transportation, and upon which agreed liability is based. The case of *Black v. Goodrich Transportation Co., 55* Wis. 319, 13 N. W. 244, 42 Am. Rep. 713, a case which it is claimed makes the distinction contended for by the appellant even while recognizing the doctrine announced in the Hart case, was based upon an entirely different contract from the one here under discussion. In that case the contract is so meagerly set forth that we can only judge of its entirety by what was said by the court, the court in that case saying:

"The courts all seem to hold that a carrier will not be held to have limited his liability against his own or his agent's negligence unless his contract expressly so provides. In interpreting his contract it will not be so construed except upon the plain language of the contract. If the words stamped upon this contract can be construed into a contract to limit the liability of the appellant to the sum of $20 in case of loss, it must be so construed as to limit such liability only in case of loss without the fault of the appellant, his agent or servants."

But this question is eliminated from the contract under discussion by the very terms of the contract itself, for it specifically releases the company from responsibilty for any other damages than those occurring as the result of collisions of trains, or from cars being thrown from the track while in transit. In this case the damage was due to the cars running into a slide. In any event, there is no testimony showing that the damage was caused by collision of trains, or by cars being thrown from the track while in transit.

We think under the testimony in this case, in consideration of the contract entered into, that the court properly

instructed the jury, and the judgment will therefore be affirmed.

FULLERTON, C. J., and HADLEY, ANDERS, and MOUNT, JJ., concur.