provided in the certificate that "if such deposit is held for six months or more interest will be allowed thereon at the rate of 3 per centum per annum from the date of this certificate." If, therefore, the company, through its agent Mr. Wise, meant to give to the plaintiff permission to collect this $100 and keep it, there certainly was no larceny, and defendant had no reasonable ground to suppose that the plaintiff had been guilty of the crime of larceny, and no probable cause existed for the prosecution against the defendant.

It is objected by the defendant that there is no proof in the case that Mr. Wise had authority to waive the terms of the agreement of employment. Whether that is so cannot be important in the consideration of the case, for the terms of the certificate of deposit are not made a part of the contract of employment. In the latter the plaintiff merely agreed "to give such a guaranty or security as shall be satisfactory to it [defendant] for the faithful performance of the terms of the agreement." Mr. Wise is described in the evidence as the manager of the Singer Manufacturing Company, at their branch which was conducted at 1447 First avenue, in the city of New York. It was he who employed plaintiff in the first instance; the transaction in relation to the terms of the plaintiff's employment was conducted by him, and he seems to have had such complete domination over the affairs of his branch that he took to himself a postal card which came to the office for an order from a customer of the plaintiff's, and sold the customer himself. He also had access to that part of the office which is behind the cashier's desk. We think the jury would have been justified from these facts in finding that the apparent authority of Mr. Wise extended to a waiver of the advantage which the defendant might insist upon of retaining plaintiff's deposit of $100 for six months after the termination of the plaintiff's employment.

We have considered the other objection raised by the defendant, that the plaintiff has not proved a cause of action, but are of the opinion that the evidence in the record called for the presentation of the case to the jury, and the plaintiff's exceptions are therefore sustained.

Plaintiff's exceptions sustained, and motion for new trial granted; costs to abide the event. All concur.

---

(115 App. Div. 44)

### BARNES et al. v. LONG ISLAND R. CO.

(Supreme Court, Appellate Division, Second Department. October 5, 1906.)

CARRIERS—CONTRACT OF SHIPMENT—LIMITATION OF LIABILITY.

    A contract limiting a carrier's liability to the value of the shipment given by the shipper for obtaining a concession in rates is not invalid, under Const. Ky. § 196, prohibiting any carrier from contracting "for relief against common-law liability."

    [Ed. Note.—For cases in point, see vol. 9, Cent. Dig. Carriers, §§ 663–667.]

Appeal from Trial Term, Queens County.

Action by William S. Barnes and others against the Long Island

Railroad Company. Judgment for plaintiffs (93 N. Y. Supp. 616), and defendant appeals. Reversed.

Argued before WOODWARD, JENKS, HOOKER, and MILLER, JJ.

William C. Beecher, for appellant.

William Lindsay (Edwin L. Kalish, on the brief), for respondents.

WOODWARD, J. The plaintiffs delivered 29 yearling colts and fillies to the Adams Express Company at Lexington, Ky., under a written contract with the said company for through shipment by it to Sheepshead Bay, N. Y.; the freight being paid in advance. During the time that the said colts and fillies were in transit over the defendant's lines an accident occurred, resulting in injury to many of these animals, and the verdict of the jury clearly establishes the negligence of the defendant, charging it with liability; the jury having assessed the damages at $30,000. The contract under which these animals were received and shipped by the Adams Express Company provided, among other things:

"Twenty horses, consigned to John Miller at Sheepshead Bay, N. Y., for the sum of three hundred and twenty-five dollars and ——— cents, which charge is fixed by and based upon the value of said animals as declared by the shipper, as hereinafter mentioned. (2) And in consideration of the premises said parties agree that the shipper, before delivering the said animals to said express company, demanded to be advised of the rates to be charged for the carriage of said animals aforesaid, and thereupon was offered by said express company alternative rates proportioned to the value of said animals, such value to be fixed and declared by the shipper, and according to following tariffs and charges. * * * (5) The shipper, in order to avail himself of said alternative rates, and in consideration thereof, being asked by the express company to value said animals, now declares the values hereinafter mentioned to be the true values of said animals so to be shipped, as follows, to wit: twenty horses, value $75 each."

There can be no doubt that a contract of this character would be valid in the state of New York, if the contract was executed here and to be performed in this state; but it was urged upon the trial that under the provisions of section 196 of the Constitution of the state of Kentucky this contract was void, and this view was accepted by the learned trial court, constituting, we believe, the only serious question in this case. If the contract was void in the state of Kentucky, if it had no vitality at the place of its execution, under the facts here involved, it may be deemed settled by authority that it could not limit the liability of the defendant, which was, by the terms of the contract, to have the same exemptions as the express company. Grand v. Livingston, 4 App. Div. 589, 38 N. Y. Supp. 490. On the other hand, if the contract was valid in Kentucky, and not in conflict with the laws of this state and its public policy, the judgment appealed from cannot be sustained, and the defendant is entitled to a reversal of the judgment.

The section of the Constitution of Kentucky relied upon to invalidate the contract under which the shipment was made, and which expressly limited the liability of the defendant to the agreed value of the horses, provides that "no common carrier shall be permitted to contract for relief against its common-law liability." The question is, what con-

struction is to be put upon this language? Is it broad enough to invalidate the contract entered into in Kentucky? Leaving out of consideration the language of the contract in so far as it attempts to make of the express company a forwarder, rather than a common carrier, under the principle that the law will not permit that to be done by indirection which may not be done directly, is the language of the Kentucky Constitution intended to invalidate such a contract as was concededly made, and permit the plaintiffs to get the benefit of reduced rates of transportation upon a false valuation, and then to charge the defendant with the value of the animals as they proved to be worth after they had been injured through the latter's negligence? We think not, for the common law never sanctioned fraud.

The limitation of the Constitution of Kentucky is that "no common carrier shall be permitted to contract for relief against its common-law liability"; that is, it shall not be permitted to contract that it shall not be liable for a breach of those duties and obligations which the common law imposes. But the contract here under consideration does not seek to give the express company, or those for whose benefit the stipulation was made, "relief against its common-law liability." It merely seeks to limit the liability to the value as given by the shipper for the purpose of getting concessions in rates, and this the common law has always sanctioned. Chancellor Kent, who undoubtedly understood the common law, in his Commentaries (2 Kent's Com. 603), lays down the proposition that:

"The common carrier is responsible for the loss of a box or parcel of goods, though he be ignorant of the contents, or though those contents be ever so valuable, unless he made a special acceptance. But the rule is subject to a reasonable qualification; and if the owner be guilty of any fraud or imposition in respect to the carrier, as by concealing the value or nature of the article, or deludes him by his own carelessness in treating the parcel as a thing of no value, he cannot hold him liable for the loss of the goods. Such an imposition destroys all just claim to indemnity; for it goes to deprive the carrier of the compensation which he is entitled to, in proportion to the value of the article intrusted to his care and the consequent risk which he incurs, and it tends to lessen the vigilance that the carrier would otherwise bestow."

See Hart v. Pennsylvania Railroad Co., 112 U. S. 331, 340, 5 Sup. Ct. 151, 28 L. Ed. 717, and authorities there cited; Chicago, Milwaukee & St. Paul Ry. v. Solan, 169 U. S. 133, 135, 18 Sup. Ct. 289, 42 L. Ed. 688; Calderon v. Atlas Steamship Co., 170 U. S. 272, 278, 279, 18 Sup. Ct. 588, 42 L. Ed. 1033, and authorities there cited.

In the case now before us the contract does not attempt to avoid liability under the common law. It merely seeks to limit its liability to the valuation which the plaintiffs, through their agent, fixed as the basis of computing the freight charges, which charges were materially less, because of the valuation of $75, than they would have been if the value had been placed at $2,000, each, as the evidence now shows them to have been worth. The express company accepted the animals for shipment under a special acceptance, and the plaintiffs could not avail themselves of the fraudulent valuation for the purpose of getting a concession in rates, and then hold the defendant liable for the higher value when an

accident has occurred. The contract provided merely what the common law has recognized as the rule governing common carriers, and it in no wise contravenes the Constitution of Kentucky. It follows, therefore, that the judgment in favor of the plaintiffs for the value of the horses as fixed by the evidence cannot be sustained.

The judgment and order should therefore be reversed, and a new trial granted, costs to abide the event, unless within 20 days plaintiffs stipulate to reduce the recovery of damages to the sum of $2,400, in which case the judgment, as reduced, should be unanimously affirmed, without costs of this appeal to either party. All concur.