[No. 7563.   Decided April 28, 1909.]

EMILY A. GOMM, *Respondent*, v. OREGON RAILROAD & NAVIGATION COMPANY, *Appellant*.[1]

CARRIERS—OF PASSENGERS—LIABILITY OVER CONNECTING LINES. The liability of a common carrier issuing a ticket over its own and connecting lines, is limited to its own line, in the absence of a special agreement.

CARRIERS—PASSENGERS—BAGGAGE—TICKETS—RESTRICTING LIABILITY—LOSS ON CONNECTING LINE. Where a railroad company sold a round-trip ticket for continuous passage over its own and connecting lines, and checked baggage to the point of destination, its conduct is inconsistent with a provision in the ticket that it acted only as agent for the connecting carrier and assumed no responsibility for baggage beyond its own line, and it is liable for the loss of baggage on the connecting line on the return trip; since such contracts are to be construed in the light of public policy and all the attending circumstances, the ticket itself not being the only evidence.

SAME. In such a case, the passenger has a right to assume that the return trip will be on the same conditions; and, where the connecting carrier issued only its local check for the baggage without calling attention to the fact that it was not checked through, the contracting carrier is liable for the resulting loss of the baggage; since it knew that if she stopped over en route to re-check the baggage the passenger would forfeit her ticket.

SAME—TICKET LIMITING VALUE OF BAGGAGE. A condition in a special excursion ticket, sold at less than the usual fare, limiting the liability of the carrier for loss of baggage to $100, is a reasonable one, and will be enforced by the courts.

Appeal from a judgment of the superior court for Spokane county, Poindexter, J., entered April 17, 1908, upon the verdict of a jury rendered in favor of the plaintiff, in an action to recover the value of baggage lost in transit over defendant's railroad.   Affirmed.

*W. W. Cotton, W. A. Robbins*, and *Samuel R. Stern*, for appellant.

*O. J. Saville* and *P. C. Shine*, for respondent.

[1]Reported in 101 Pac. 361.

CHADWICK, J.—On June 21, 1907, the plaintiff purchased from the Oregon Railroad & Navigation Company, at Spokane, Washington, an excursion ticket, at a price less than the usual fare, entitling her to transportation with a reasonable amount of baggage over the lines of the Oregon Railroad & Navigation Company from Spokane, Washington, to Portland, Oregon, and from Portland, Oregon, to Albany, Oregon, over the lines of the Southern Pacific Company, and from thence over the line of the Corvallis & Eastern Railroad Company, to Newport, Oregon, and return over the same lines. The contract part of the ticket was as follows:

"In issuing and selling this ticket for passage over other transportation lines The Oregon Railroad and Navigation Company acts only as agent for such lines, assumes no responsibility beyond its own line, and assumes no liability either for itself or for the lines represented on this ticket, for baggage except for wearing apparel, and then only for one hundred dollars in value, unless a contract in writing is made for a greater value. This ticket is void unless officially stamped and dated, and the coupons belonging to this ticket will be void if detached."

A coupon was attached which was, in effect, an order on the Southern Pacific Company for a ticket over its line from Portland, Oregon, and the Corvallis & Eastern to Newport and return. On the same day the plaintiff left Spokane and pursued her journey with an interruption of one day in Portland, Oregon, occasioned by the fact that no trains ran on the Corvallis & Eastern road on Sunday. Her baggage was checked to Newport by the Oregon Railroad & Navigation Company. She left Newport on the 11th day of September, 1907. The agent of the Corvallis & Eastern road at Newport gave her a local check that, in so far as the railroad companies engaging to carry this passenger are concerned, was good only over the line of that road. However, plaintiff swears—and her testimony is not contradicted in that behalf—that the word "Spokane" was marked on the local check as the destination of her baggage. She arrived in Spo-

kane a day or two later, and presented her check to the local agent of the Oregon Railroad & Navigation Company. The company was unable to deliver the baggage, and undertook to recover it for her. The baggage was not found, and plaintiff began this action to recover its value, which she alleged to be in the sum of $500. Defendant denied all liability, and set up the particular defenses that, in selling the ticket to Newport and return, it merely acted as the agent of the connecting carriers; that its relation to the transaction was clearly set forth in the conditions printed in the body of the ticket; that it is not shown that the baggage ever came into the possession of appellant, and for these reasons plaintiff had no right of recovery against it. From a verdict in favor of the plaintiff for the sum of $500, defendant has appealed.

Without speculating on the various questions that have been entertained in the cases, and which have led to hopeless contrariety of opinion as to the effect to be given to the passenger's knowledge, or lack of knowledge, or opportunity to know the character and effect of the contract printed on a railroad ticket, and the extent to which the common law liability to transport a passenger to his destination may be limited by special contract, we shall assume, for the purposes of this opinion, that the respondent had full knowledge of all the conditions, reserving the question whether the attempt of the appellant to limit its liability to losses occurring on its own line, was, considering the facts presented in the record, effectual to accomplish its purpose. It seems to be settled by practically all of the cases that it is the duty of the carrier issuing a coupon ticket, in the absence of any special contract limiting its liability, to carry the passenger only to the end of its line and deliver to the next carrier in the route beyond.

"This rule of liability is adopted generally by the courts in this country, and is in itself so just and reasonable that we do not hesitate to give it our sanction." *Michigan Cent. R. Co. v. Mineral Springs Mfg. Co.*, 16 Wall. 318, 21 L. Ed. 297.

And in *Ogdensburg etc. R. Co. v. Pratt*, 22 Wall. 123, 22 L. Ed. 827, it was said: "The fair result of the American cases limits the carrier's liability as such, when no special contract is made, to his own line." The cases were followed in *Myrick v. Michigan Cent. R. Co.*, 107 U. S. 102, 1 Sup. Ct. 425, 27, L. Ed. 325, where it was said:

"In the absence of a special agreement to that effect, such liability will not attach, and the agreement will not be inferred from doubtful expressions or loose language, but only from clear and satisfactory evidence."

These cases were followed in *Pennsylvania R. Co. v. Jones*, 155 U. S. 333, 15 Sup. Ct. 136, 39 L. Ed. 176. It is also a rule well within the great weight of authority, that the nature of the contract must be determined by a consideration of all the circumstances attending the particular case presented, and that the ticket itself is not the only evidence that may be introduced and considered; for, notwithstanding the form of the ticket and the construction put upon it by the carrier, circumstances may be such as to imply an entirely different contract. *Pennsylvania R. Co. v. Loftis*, 72 Ohio St. 288, 74 N. E. 179, 106 Am. St. 597. In fact, the most striking incident of our present inquiry is that each case involving the reasonableness of conditions printed upon railroad tickets has been determined not as an abstract proposition, but rather by their application to the particular facts disclosed in the instant case.

The principal question for our determination is the legal effect of the contract above quoted. The interest of the public in the matter and manner of the transportation of passengers or goods is such that all contracts limiting liability, made or attempted to be made by the carrier, will be construed in the light of public policy. A part of the burden of properly disposing of this case is overcome by the case of *Allen & Gilbert-Ramaker Co. v. Canadian Pac. R. Co.*, 42 Wash. 64, 84 Pac. 620, which commits this court to this doc-

trine.  While there have been a number of cases cited that are seemingly in point, we think the limitation clause of the contract now before us should be construed with reference to the principal engagement and conduct of the appellant.  It would be manifestly unfair and unjust, under the facts of this case, to hold that a carrier could sell a ticket for continuous passage to a certain point on or over the lines of connecting carriers, and at the same time limit its liability to answer only for loss of baggage occurring on its own road.  The general rule is that a through ticket, whether over one line or over the lines of connecting carriers, entitles the passenger to an entire trip and to have his baggage checked through to his destination.  A through contract as to a passenger is a through contract as to his baggage.  Hutchinson, Carriers (3d. ed.), 1296.  In the case at bar appellant became the contracting party.  It undertook to provide respondent with passage from Spokane to Newport, Oregon, and return, over its own line, the Southern Pacific in Oregon, and Corvallis & Eastern Railroad Company.  It fixed the condition that the trip should be continuous, and checked her baggage to its destination.  It assumed to make the contract for itself as well as the connecting carriers.  The condition requiring a continuous passage relieved the contract of the rule generally applied to coupon tickets, where a passenger may pursue his journey at his own pleasure, checking his baggage from place to place, thus taking it out of the control of the contracting carrier.  A coupon ticket does not import a continuous passage, and the rule of law applicable to ordinary coupon tickets should not be made to apply to a case like the one before us.  Hutchinson, Carriers (3d ed.),1049.  Respondent had a right to assume that, having to meet the same condition on the return trip, she would have the same privilege of checking and the same protection for her baggage through to her destination in returning, that she had in going.  The Corvallis & Eastern road accepted the passenger and her baggage

upon the terms fixed by the first carrier; that is, a round trip excursion ticket calling for a continuous passage with her baggage, and was bound in law to return her upon the same terms and with like privilege as had been given her by the appellant at Spokane. It did not do so. It gave her a local baggage check, good only over its own line, without calling her attention to its character, knowing that if she stopped over at any way point or junction to re-check her baggage, she would forfeit her ticket. This condition was within the knowledge of appellant when it became the contracting party, and whatever its attempt to make itself an agent of the connecting carrier may have been as between the carriers themselves, it became as to the respondent a principal, and liable to her as a guarantor that she and her baggage would be returned to her home under the same conditions as it had in fact transported her. She is not bound to go seeking for her baggage or for the negligent carrier. While the Oregon road would in our judgment be also liable to answer for its negligence, respondent can sue on her contract, and that we have shown was with the appellant.

In the case of *Allen & Gilbert-Ramaker Co. v. Canadian Pac. R. Co., supra,* speaking to this point, the court said:

"In fact, it seems to us that to deny this right to the shipper would be equivalent to a denial of justice at the hands of the law. The money is paid in one lump sum. The equitable distribution of this money is not within the province of the shipper. He has no way of ascertaining what the contract is between the different connecting lines in relation to their recompense or responsibility, and if his goods are lost or damaged he is relegated to a search across the continent to obtain information as to the responsibility of the different carriers for the damage, information which, in many cases, would be entirely unavailable. He has no way of accompanying the goods to look after them himself; probably would not be allowed to do so, under the transportation rules of the different companies, if he were so inclined. He deals with one company, which accepts his goods, receipts him for the same, and contracts to carry them to their destination; and any

rule which would throw upon him the difficulties we have suggested would be unnecessary and inequitable."

Escape from this reasoning is sought in the suggestion that a different rule prevails between the carriers of freight and baggage, in that a passenger accompanies his baggage and can look out for it. While in theory this may be true—it has been so decided by some courts—yet in fact and practice nothing càn be further from the truth. To undertake to look after baggage under modern conditions of travel would put an impossible burden on the passenger, and an attempted compliance on the part of the traveling public would result in a condition intolerable to the railroad companies. In the case of *Atchison etc. R. Co. v. Roach* (35 Kan. 740), 27 Am. & Eng. R. R. Cases 257, cited by appellant, it was held that the last carrier was not liable for the loss of baggage, in the absence of a showing of such community interest as would make the carriers partners *inter sese*, and that the sale of a through ticket over the route by the connecting carriers, and the checking of baggage to the end of the route without other evidence to show the relations of the companies, would not bind the last carrier as a principal. Without admitting the rule, it seems to us that the difference between that case and this is suggested by the conclusion reached by the court. The argument made to exempt the last carrier would bind the first carrier had it been the defendant. The court said:

"The theory that the defendant company was the original contracting carrier finds no support in the testimony, and no liability arises against the company on that ground. Where, then, is the liability? It is contended by the railroad company that the New York, Lake Erie & Western R. Co., being the first carrier, is alone liable. While a railroad company cannot be compelled to transport to a point beyond its own line, it is well settled that it may lawfully contract to carry persons and property over its own and other lines, to a destination beyond its own route; and when such a contract is made, it assumes all the obligations of a carrier over the

connecting lines as well as its own. In such cases the connecting carriers engaged in completing the carriage are deemed to be agents of the first carrier, for whose negligence and default the contracting carrier becomes liable. *Berg v. Atchison, T. & S. F. R. Co.*, 30 Kan. 561; s. c. 16 Am. & Eng. R. R. Cases, 229; Lawson, Carr, § 235; Hutch. Carr, § 145; Thomp. Carr. 431; 2 Rorer, R. R. 1234. Of course, a railroad company, or other common carrier, may limit its liability to the loss or injury occurring on its own line, and the understanding or contract between the parties is to be determined from the facts of each case. Some of the courts have held that the mere acceptance of the property marked for transportation to a place beyond the terminus of the road of the accepting carrier amounts to an undertaking to carry to the ultimate destination, wherever that may be, and, in the absence of any conditions or limitations to the contrary, will make it liable for loss occurring upon connecting lines as well as its own; while others hold that in such a case the carrier is only bound to safely carry to the end of its own route, and there to deliver to the connecting carrier for the completion of the carriage. Lawson, Carr. §§ 238-240. But where a railroad company sells a through ticket, for a single fare, over its own and other roads and checks the baggage of the passenger over the entire route, more is implied, it seems to us, than in the mere acceptance of the property marked for a destination beyond the terminus of its own line. The sale of a through ticket, and the checking of the baggage for the whole distance, is some evidence of an undertaking to carry the passenger and baggage to the end of the journey. The contract need not be an express one, but may arise by implication, and may be established by circumstances, the same as other contracts. In Wisconsin a passenger purchased a through ticket from the Chicago & Milwaukee R. Co. from Milwaukee to New York City, and at the same time delivered her trunk to that company, and received therefor a through check to New York City. Upon arrival at New York, the trunk was found to have been opened and some of the articles taken therefrom. The supreme court, in ruling upon the effect of the railway company issuing the through ticket and check, stated that 'the ticket and check given by the Chicago & Milwaukee R. Co. implied a special undertaking by that company to safely transport and carry, or cause to

be safely transported and carried, the plaintiff and her baggage over the roads mentioned in the complaint, from Milwaukee to the city of New York. This, we think, must, in legal contemplation, be the nature and extent of the contract entered into and assumed by that company when it sold the plaintiff the through ticket, and gave a through check for the trunk, and received the fare for the entire route.' *Candee v. Pennsylvania R. Co.,* 21 Wis. 589; *Illinois Cent. R. Co. v. Copeland,* 24 Ill. 332; *Carter v. Peck,* 4 Sneed, 203; *Railroad Co. v. Weaver,* 9 Lea 38; *Baltimore & O. R. Co. v. Campbell,* 36 Ohio St. 647; s. c., 3 Am. & Eng. R. R. Cas. 246; 2 Rorer, R. R. 1001. From the authorities, we conclude that the sale of a through ticket, for a single fare, by a railroad company, to a point on a connecting line, together with the checking of the baggage through to the destination, is evidence tending to show an undertaking to carry the passenger and baggage the whole distance, and which, in the absence of other conditions or limitations, and of all other circumstances, will make such carrier liable for faithful performance, and for all loss on connecting lines, the same as on its own. The liability of the first carrier does not necessarily relieve the defendant company from responsibility. Each carrier is liable for the result of its own negligence; and although the first carrier may have assumed the responsibility for the transportation to a point beyond its own route, any of the subsequent or connecting carriers to whose default it can be traced will be liable to the owner for the loss of his baggage. Hutch. Carr. § 715; *Aigen v. Boston & M. R. Co.,* 132 Mass. 423; s. c. 6 Am. & Eng. R. R. Cas. 426; *Railroad Co. v. Weaver,* 9 Lea 39."

The case of *Felder v. Columbia etc. R. Co.* (21 S. C. 35, 53 Am. Rep. 656), 27 Am. & Eng. R. R. Cases 264, is the one most relied upon by appellant. This was a case sounding in tort against the last carrier. We do not consider it in point. Another leading case upon which dependence is put is that of *Milnor v. New York etc. R. Co.,* 53 N. Y. 363. In that case the contracting carrier was sued for a loss occurring off of its line, and the court held it was not liable, on the theory that it acted as the agent of the negligent carrier merely for the purpose of selling its tickets. The force of this case as an

authority is probably overcome, if indeed the theory upon which it rests is not absolutely destroyed, by the later case of *Hutchins v. Pennsylvania R. Co.*, 181 N. Y. 186, 73 N. E. 972, 106 Am. St. 537, wherein the *Milnor* case was relied on, among others, by appellant, and cited as controlling in a dissenting opinion rendered by Justice O'Brien.

Reference to the innumerable cases against carriers upon the subject of liability for lost baggage or freight, shows that, if the last carrier is sued, it generally defends upon the ground that it was not a party to the contract, or that the goods did not come into its possession; whereas if the contracting carrier is sued, it usually defends upon the theory that it acted only as agent for the connecting carrier, and in the absence of a special contract or the disclosure of facts showing a partnership, it is not bound to answer; thus, in either event, binding the party damaged to the production of proof entirely beyond his control, and making his recovery almost if not absolutely impossible. He might have to go from one to the other, through all the connecting system, to find the responsible party. The only just rule is to bind the contracting carrier to its contract, where the facts in the given case warrant it, and to hold all other connecting carriers to answer for their negligence, in which event it would no doubt be necessary to show that the baggage had actually come into the possession of the negligent carrier.

Here appellant was the contracting party. It agreed in law to do all that the party paid for, and is held on the contract rather than on the theory of tort. The effect of the ticket issued to respondent was to deprive her of the opportunity of looking after her baggage. If it expected to put that duty upon her it should have so informed her. The conduct of appellant was inconsistent with the condition printed on the ticket, and raised an implied contract that her baggage would be returned in like manner as it had been forwarded. The nature of appellant's engagement was such as to make

the delivery of the baggage of respondent to the Corvallis & Eastern Company a delivery to the appellant.

The court below allowed a recovery for the full value of the baggage as alleged by respondent. The fourth condition upon the ticket issued to respondent is as follows: "The baggage liability limited to wearing apparel not exceeding $100 in value." In such cases the same rule applies to baggage as to freight, 6 Cyc. 663. It has been almost universally held that this condition, when attached to a ticket sold at a price below the usual fare, is a reasonable one, and will be enforced by the courts. The respondent's recovery should have been limited to the amount agreed upon. *Windmiller v. Northern Pac. R. Co.*, ante p. 613, 101 Pac. 225; *Jensen v. Spokane Falls & N. R. Co.*, 51 Wash. 448, 98 Pac. 1124; *Hill v. Northern Pac. R. Co.*, 33 Wash. 697, 74 Pac. 1054; *Hart v. Pennsylvania R. Co.*, 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717; *The Priscilla*, 106 Fed. 739.

This case will therefore be affirmed, with instructions to the lower court to enter a judgment in favor of respondent for the sum of $100. Appellant will recover its costs in this court.

RUDKIN, C. J., DUNBAR, MOUNT, and FULLERTON, JJ., concur.

CROW, GOSE, PARKER, and MORRIS, JJ., took no part.