[No. 9438.   Department One.   July 24, 1911.]

CARSTENS PACKING COMPANY, *Respondent*, v. NORTHERN PACIFIC RAILWAY. COMPANY, *Appellant.*[1]

CARRIERS—LIVE STOCK—CONTRACT AS TO VALUE—LIMITATION OF LIABILITY—STATUTES—PUBLIC POLICY. Rem. & Bal. Code, § 8648, providing that no contract shall exempt a carrier of live stock from liability that would exist had no contract been entered into, does not invalidate an agreement with the shipper as to the value of the stock and limiting liability to such value; and the same is not void as against public policy when freely and fairly made in consideration of the rate given, a higher valuation being available at a higher rate.

Appeal from a judgment of the superior court for Pierce county, Chapman, J., entered June 28, 1910, upon the verdict of a jury rendered in favor of the plaintiff, in an action for the value of live stock lost while being transported. Reversed.

[1]Reported in 116 Pac. 625.

*Geo. T. Reid, J. W. Quick,* and *L. B. da Ponte,* for appellant.

*Ellis, Fletcher & Evans,* for respondent.

Mount, J.—The respondent brought this action to recover the value of certain sheep and hogs, lost through the alleged negligence of the defendant. The alleged value of the sheep and hogs lost was $821.05. The case was tried to the court and a jury. A verdict was returned in favor of the plaintiff for the sum of $713.20. Judgment was entered upon the verdict. The defendant appeals.

There is no substantial dispute upon the facts in the case. It appears that, on December 16, 1909, the plaintiff shipped a car load of hogs and a car load of sheep from Stockdale, Oregon, to Tacoma, Washington. The two car loads were delivered at Stockdale to the Spokane, Portland & Seattle Railroad Company, which transported the stock to Vancouver, Washington, and there delivered it to the Northern Pacific Railway Company, to be transported to Tacoma. The stock was delivered to the railway company at Stockdale by one F. M. Lacey, the plaintiff's agent, who at the time of delivery executed a contract, by which it was agreed that the value of each pig was ten dollars and each sheep was three dollars, being the valuation upon which the rate of carriage was based. At the time this contract was entered into, an option was given the shipper to fix a higher valuation upon the stock for which a higher rate was charged, the additional rate being twenty-five per cent added to the rate charged for each 100 per cent or fraction thereof of valuation of the stock over the valuation fixed by the contract entered into.

At the trial of the case, it was conceded that the train upon which the stock was being transported was wrecked by a collision with another train on the defendant's line, between Vancouver and Tacoma, and that 108 of the sheep were killed and lost to the plaintiff, except for a small sum realized

9—64 WASH.

from the carcasses for fertilizer and for certain pelts.    It was also conceded that two of the hogs were lost, and that the remaining hogs suffered an excessive shrinkage by reason of the wreck and consequent delay in transit.    The total for the hogs amounted to $32.65.    The appellant requested the trial court to instruct the jury, in substance, that the measure of plaintiff's recovery was fixed by the contract, and should not exceed three dollars for each sheep and ten dollars for each hog lost.    The court refused to give this instruction, but instructed the jury that the measure of recovery was "the difference between the actual market value of the sheep and hogs so injured, in the condition in which they were delivered to the plaintiff at Tacoma, and the actual value thereof had they been delivered to the plaintiff uninjured except for such injuries as would result·from reasonably careful transportation."

The main question in the case is upon the measure of damages.    The defendant contends that the measure is fixed by the agreement at three dollars for each sheep and ten dollars for each hog lost; while the plaintiff contends that the damages should be measured by the actual value of the animals at the place of destination, as the court instructed the jury.    It is claimed by the plaintiff that § 23 of the railroad commission act, as amended in 1907, makes the contract in question void.    The defendant argues (1) that this amendment is void because it is not germane to the title of the act, and (2) that if valid, it has no application to the contract in question.    The amendment is as follows:

"This act shall not have the effect to release or waive any right of action by the state or any person for any right, penalty, or forfeiture which may have arisen or may hereafter arise under any law of this state; and all penalties accruing under this act shall be cumulative of each other, and a suit for the recovery of one penalty will not be a bar to recovery of any other.    And provided, that no contract, receipt, rule, or regulation shall exempt any corporation engaged in transporting live stock by railway from liability of

a common carrier, or carrier of live stock, which would exist had no contract, receipt, rule, or regulation been made or entered into." Laws 1907, p. 691, § 1; Rem. & Bal. Code, § 8648.

Before the passage of this amendment, we had, upon different occasions, passed upon the validity of contracts similar to the one now before us, and had sustained them as not being against public policy. *Hill v. Northern Pac. R. Co.*, 33 Wash. 697, 74 Pac. 1054; *Windmiller v. Northern Pac. R. Co.*, 52 Wash. 613, 101 Pac. 225; *Gomm v. Oregon R. & Nav. Co.*, 52 Wash. 685, 101 Pac. 361, 25 L. R. A. (N. S.) 537; *Pierson v. Northern Pac. R. Co.*, 61 Wash. 450, 112 Pac. 509. In the last named case, we said, in reference to a contract like the one in question here:

"If this contract was freely and fairly entered into, it measures the rights and obligations of the parties, under repeated rulings of this and other courts."

It follows, therefore, that, unless the rule has been changed by the statute above quoted, the contract in question measures the extent of the plaintiff's recovery from whatsoever cause. The statute provides:

"That no contract . . . shall exempt any corporation engaged in transporting live stock by railway from liability of a common carrier . . . which would exist had no contract . . . been entered into." Laws 1907, *supra*.

This statute means that the common law liability cannot be avoided by contract. It is the duty of the carrier to safely transport the goods, and in case of loss from negligence or otherwise, the carrier is liable for their value, which duty may not be avoided. But the statute does not say, and we think does not mean to say, that the parties may not agree upon the value of the shipment before it is made. It simply means that the duty of the carrier to safely carry cannot be avoided by contract, and this is the public policy which the statute sought to declare. If the property is lost or injured, the carrier is liable for the injury or value of

the property. But the parties are not, and were not at common law, prohibited from agreeing upon value, either before or after injury or loss has occurred.

In speaking to this question, in *Barnes v. Long Island R. Co.*, 100 N. Y. Supp. 593, the appellate division of the supreme court of New York said:

"Chancellor Kent, who undoubtedly understood the common law, in his Commentaries (2 Kent's Com. 603), lays down the proposition that: 'The common carrier is responsible for the loss of a box or parcel of goods, though he be ignorant of the contents, or though those contents be ever so valuable, unless he made a special acceptance. But the rule is subject to a reasonable qualification; and if the owner be guilty of any fraud or imposition in respect to the carrier, as by concealing the value or nature of the article, or deludes him by his own carelessness in treating the parcel as a thing of no value, he cannot hold him liable for the loss of the goods. Such an imposition destroys all just claim of indemnity; for it goes to deprive the carrier of the compensation which he is entitled to, in proportion to the value of the article intrusted to his care and the consequent risk which he incurs, and it tends to lessen the vigilance that the carrier would otherwise bestow.'"

In that case it was held that a contract fixing the value of the shipment, in substance the same as the contract here, did not attempt to avoid liability, but sought to fix the liability at the value which the parties agreed upon as the basis for computing freight charges. In *Greenwald v. Weir*, 115 N. Y. Supp. 311, the court, in discussing the effect of the amendment to § 20 of the interstate commerce act, which provides, the same as our statute, that no contract, etc. shall exempt such common carrier from the liability hereby imposed, held that the amendment to the Federal statute was declaratory of the common law, but created a new liability by making the initial carrier liable for a loss upon the line of a connecting carrier, and said:

"What the statute forbids is the use of any device whereby the carrier undertakes to 'exempt' himself from the newly

imposed liability.   The use of the word 'exempt' is appro-
priate if it was the intention of the Congress to prevent a
carrier from relieving himself altogether from liability for a
loss occurring on the line of a connecting carrier, but wholly
inappropriate if intended to prevent an agreement between
the carrier and the shipper as to the value of the goods to
be shipped.   Both the Federal courts and the courts of this
state have uniformly distinguished between shipping con-
tracts wherein the carrier has undertaken to exempt himself
from liability at all and those in which he has agreed with
the shipper as to the amount which should be taken as the
value of the goods.   Contracts of the first kind have been
generally condemned, and contracts of the second kind sus-
tained. . . .   This distinction rests upon a sure and sub-
stantial basis.   The contract of carriage by a common car-
rier imposes upon the latter a double obligation—that of
carriage proper, and that of insurance.   It is reasonable
and customary to fix a rate to be paid with reference to both
liabilities, and in order to fix such rate it is necessary that
the carrier should be apprised of the value of the article to be
carried."

See, also, *Greenwald v. Barrett,* 199 N. Y. 170, 92 N. E. 218;
*Bernard v. Adams Express Co.,* 205 Mass. 254, 91 N. E.
325, 28 L. R. A. (N. S.) 293; *Larsen v. Oregon Short Line
R. Co.* (Utah), 110 Pac. 983.

It is apparent, from the reasoning in these cases, that
neither our statute nor the Federal statute undertakes to do
more than to prevent contracts which would relieve carriers
of their common law duty.   The common law did not, and
our statute does not, prevent the carrier and the shipper
from agreeing upon the value of the goods.   Such agree-
ments, when freely and fairly made, are binding.   Freight
rates are necessarily based upon the character and value of
the goods shipped.   It is unreasonable to suppose that a
carrier can transport a horse worth $100,000 for the same
price for which it can transport one worth only $100.   The
reason is obvious.   The more valuable article requires better
facilities and more constant care, attention, and expense.   If
the statute in question means that the shipper and carrier

may not agree upon the value of the article shipped and be bound by that agreement, the result is that no freight rate may be based upon value, but that a level rate must be fixed on all articles of the same kind without reference to the value. This would mean that the shipper of less valuable freight must pay the cost of shipping the more valuable freight. In other words, to arrive at a reasonable rate, a basis must be made upon average value, which would avoid the universally accepted rule for rate making. The statute did not intend such a result. In Iowa in *Hart v. Chicago & N. W. R. Co.*, 69 Iowa 485, 29 N. W. 597; in Nebraska in *Chicago etc. R. Co. v. Witty*, 32 Neb. 275, 49 N. W. 183, 29 Am. St. 436, and in Kansas, in *Kansas City etc. R. Co. v. Simpson*, 30 Kan. 645, 2 Pac. 821, 46 Am. Rep. 104, under statutes similar to ours, it was held that a contract limiting the liability to a certain agreed value was void. But it seems to us that in those cases the courts have overlooked the right of the parties to agree upon a reasonable value of the articles offered for shipment. At any rate, we have adopted a different rule and one which seems to follow the better reasoning and the great weight of authority. In the case of *Carstens Packing Co. v. Southern Pac. Co.*, 58 Wash. 239, 108 Pac. 613, 27 L. R. A. (N. S.) 975, we held that the statute under consideration established the public policy of the state. We were there discussing the effect of a contract which sought to relieve the carrier against liability for negligence, and held to the almost universal rule that the statute controlled in a case of that kind. But in this case, we are of the opinion that the statute has no application and does not prevent an agreement as to value. We therefore conclude that the cases heretofore decided by us are controlling in this case. With this view, it is unnecessary for us to consider the question of the constitutionality of the amendment.

The judgment appealed from is therefore reversed, and the cause remanded with directions to the trial court to enter

a judgment for the value of the sheep lost, at the price agreed upon, viz., three dollars per head for 108 head, and for $32.65, being the loss on account of hogs, making a total of $356.65.

DUNBAR, C. J., PARKER, FULLERTON, and GOSE, JJ. concur.