(78 Misc. Rep. 171.)

WIMPFHEIMER v. A. T. DEMAREST & CO.

(Supreme Court, Appellate Term, First Department.   November 8, 1912.)

LIVERY STABLE KEEPERS (§ 7*)—INJURY TO AUTOMOBILE—PRESUMPTIONS AND BURDEN OF PROOF.

 Where plaintiff delivered to defendant for storage in his garage an auto body in apparently good condition, and the same, when returned nearly three years later, was broken, and the upholstery moth-eaten, and an expert proved that, by adopting the usual methods of caring for the car and reporting to the owner when the existence of moths was discovered, the body would not have been damaged to the extent it was, there was a prima facie case of negligence of defendant, who, to escape liability, must prove the degree of care exercised by him, the conditions existing in the garage, the improbability of moths frequenting the place, or that it was not customary for warehousemen, storing automobiles, to inspect and report their condition, and knowledge by plaintiff of such custom.

 [Ed. Note.—For other cases, see Livery Stable Keepers, Cent. Dig. § 6; Dec. Dig. § 7.*]

Appeal from Municipal Court, Borough of Manhattan, Fifth District.

Action by Charles A. Wimpfheimer against A. T. Demarest & Co.   From a judgment of dismissal at the close of the case of plaintiff, he appeals.   Reversed, and new trial ordered.

Argued October term, 1912, before SEABURY, GUY, and BIJUR, JJ.

James, Schell & Elkus, of New York City (Joseph M. Proskauer and Russell H. Kittel, both of New York City, of counsel), for appellant.

Morris & Plante, of New York City (Guthrie B. Plante, of New York City, of counsel), for respondents.

GUY, J.   Appeal by plaintiff from a judgment dismissing the complaint at the close of plaintiff's case.   The action was brought to recover damages for negligence of the defendants in permitting the upholstery of the body of plaintiff's automobile, which was stored with defendants, to become moth-eaten and broken during the time it was stored with defendants.   Plaintiff proved that when the auto body, a high-class French body, was stored with defendants in April or May, 1908, it was apparently in perfect condition as far as the upholstery was concerned, and the woodwork was in good condition, except for simple wear and tear; that it remained with defendants until December, 1911, a period of about three years, and when redelivered to plaintiff was broken in places and the upholstery moth-eaten, so as to render it worthless.

Plaintiff called an expert witness, who testified as to the fair and reasonable cost of repairing the body of the car, including the upholstery.   On the cross-examination of this witness, he admitted that it was possible that an inspection at the time of the delivery of the auto body would not have shown whether there were moths

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in the upholstery or not; that it was possible there were moth eggs in the upholstery then. This witness further testified, however, that the proper method of procedure for the warehouseman was to inspect the body of the car from time to time, and, if he discovered moths, to notify the owner and get permission to do the necessary work to get rid of them, which would consist of brushing the cloth constantly and saturating it with turpentine; that it is not a common thing for moths to be in hair when the body is in use, unless the hair is greasy; that the condition of the auto body when it was taken away was such as to indicate that it had not been brushed.

At the conclusion of plaintiff's case, the court dismissed the complaint, stating that it did so because:

"From the testimony of the expert put on the stand by the plaintiff it appears that the damage might have been done on either of two theories; that is, either that the moths might have been introduced through the negligence of the defendant in not securing it from contact with other articles in which there were moths, or from the fact that the moths were already at the time of the deposit in the interior of the upholstery."

The dismissal of the complaint was error. Plaintiff, having proved the delivery to defendants of the auto body in apparently good condition and the return thereof in a badly damaged condition, and having proved by an expert witness that by the adoption of customary and usual methods of caring for the car, and reporting to the owner when the existence of moths was discovered, the body would not have been damaged to the extent that it was damaged at the time of redelivery to plaintiff, made out a prima facie case of negligence on the part of the defendants, which would render defendants liable, "unless the defendants were prepared to show that the damage resulted from causes for which they were not responsible." Herzig v. New York Cold Storage Co., 115 App. Div. 40, 100 N. Y. Supp. 603. This evidence of the plaintiff might have been rebutted by the defendants showing the degree of care exercised by them, the conditions existing in the garage, the impossibility or improbability of moths frequenting a place where large quantities of gasoline were in constant use, or that it was not customary for warehouses engaged in storing automobiles to inspect them and report their condition to the owners, and by establishing the knowledge of the plaintiff on that point. But these were all matters of defense, the burden of establishing which was upon the defendants, and upon which, even had such evidence been introduced by the defendants, plaintiff was entitled to go to the jury on the issue whether defendants had exercised reasonable care in safeguarding the property placed by plaintiff in their custody.

The judgment must therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.