MERCHANTS' DISPATCH AND TRANS. CO. v. CORNFORTH.

1. The employment of a common carrier is a public employment, and while he may, by special agreement, excuse himself for *accidental losses*, he is responsible for all damages occasioned by negligence or misfeasance, either of himself or servants, and cannot divest himself of this liability either by special contract or notice.

2. When a common carrier accepts delicate fruits for transportation half across the continent in the winter season, the character of his employment, independent of any contract, clearly implies that he will ship them in such vehicles, and exercise such diligence as may be reasonably necessary for their safe passage to their destination.

### Error to Probate Court of Arapahoe County.

ACTION in assumpsit against a common carrier to recover damages for not safely and securely delivering certain goods. The cause was tried to the court, and the plaintiff had judgment for $750. The facts are sufficiently stated in the opinion, the principal point presented in the argument being upon the right of a common carrier to limit his liability by contract or notice.

Messrs. HUGHES & WELBORN, and Mr. SAM P. ROSE, for plaintiff in error.

Mr. JOHN W. BLACKBURN, for defendant in error.

THATCHER, C. J.   The Merchants' Dispatch and Transportation Company is a common carrier. Birks Cornforth, the defendant in error, who was the plaintiff in the court below, through their agents, Raymond Bros., bought a car load of fruits, consisting of oranges, lemons, and bananas, of Underhill & Stewart, in New York city. The fruit was delivered to and shipped by the plaintiff in error, from New York to Denver, in the month of February, A. D. 1874. The evidence shows that Raymond Bros. entered into an oral contract with the company to ship the fruits in a refrigerator car through to Denver without change; that subsequently, *and after the fruit was loaded in the car*, a bill of lading, made out by the company in the name of Raymond Bros., was delivered to them, on which was printed this, among other conditions: "The company will not hold itself liable at all, for injury to any article of freight during the course of transportation, occasioned by the weather." On the bill of lading was written the words

"general release," the import of which was explained in the evidence to be, that the common carrier was released from all loss or damage happening to the shipment under the bill of lading.

In our view, so far as the rights of the parties are concerned, it is immaterial whether the oral contract entered into between the company and Raymond Bros., or the stipulations in the bill of lading control. In either event the result will be the same, as becomes evident when we consider the nature and extent of a common carrier's liability, which is established by law, and within certain limits fixed by considerations of sound public policy, independent of contract. The employment of a common carrier is a public employment. The duty he owes as such is a public duty. The obligations the law casts upon him he cannot throw off at pleasure. To a limited extent only can he avoid responsibility. With a zealous eye the law keeps vigil over the public weal, and will not permit a carrier to enter into a contract which will exempt him from liability so far as his duty is of a public character. No special notice brought home to the customer can relieve, no contract can exonerate a common carrier from the consequences of his failure to exercise that degree of diligence to which he is bound by the nature of his employment. While by special agreement he may excuse himself for *accidental losses*, he will nevertheless continue responsible for all damages occasioned by negligence or misfeasance in him or his servants. 2 Kent's Com. 607. In the leading English case of *Wyld* v. *Pickford*, 8 Mees. & Welsb. 443, Baron PARKE, referring to the extent to which a carrier would be liable, after notice to the customer, says " he still undertakes to carry for hire, and is therefore bound to use ordinary care in the custody of goods, and their conveyance to and delivery at their place of destination, *and in providing proper vehicles for their carriage.* It is enough to prove an act of ordinary negligence; and after such notice, it may be that the burden of proof of damage or loss by the want of such care would lie on the plaintiff."

The doctrine that a common carrier cannot divest himself of liability either by special contract or notice, where damage or loss results from his fraud, negligence, or misfeasance, may now be considered as well established in this country. *Sager* v. *The Portsmouth S. & P. and E. R. R. Co.*, 31 Me. 228; *Kallman* v. *W. S. Express Co.*, 3 Kan. 211; *Pratt et al.* v. *Ogdensburg and L. & C. R. R. Co.*, 102 Mass. 557; *Farnham* v. *Camden and Amboy R. R. Co.*, 55 Penn. St. 58; *Indianapolis Railroad* v. *Allen*, 31 Ind. 394; *Berry* v. *Cooper*, 28 Ga. 543.

In the well-considered case of *Railroad Company* v. *Lockwood*, 17 Wall. 357, the court arrives at the following among other conclusions, as to the liability of common carriers: "*First.* That a common carrier cannot lawfully stipulate for exemption from responsibility, when such exemption is not just and reasonable in the eye of the law. *Secondly.* That it is not just and reasonable in the eye of the law, for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants."

Applying these principles, the case before us is one of no great difficulty. There is some evidence that the fruit was packed in a refrigerator car in New York city; such a car, as the testimony establishes, is usually employed in the winter for that purpose, it being well adapted to exclude the cold. The evidence conclusively shows that when the fruit reached Denver, it was in an ordinary box car, and badly frozen. There were apertures in the car through which the cold and snow entered. There was snow all around the boxes of fruit. It appears in evidence, that fruit shipped in a common box car will freeze in ordinary winter weather, and if shipped with due care in a refrigerator, or other car adapted to keep out the cold, it will not freeze in severe winter weather.

Was the company guilty of negligence?

When a common carrier accepts for transportation in the winter season, to ship half across the continent, delicate fruits, the character of his employment, independent of any

contract, clearly implies that he will ship them in such cars and exercise such diligence as may be reasonably necessary for their safe passage to their destination. Having failed to do this he cannot escape liability. In the case of *Wing* v. *The New York and Erie R. R. Co.*, 1 Hilt. 241, where by the negligence of the carrier a certain lot of potatoes was frozen, the court says : "The fact that they were perishable imposed upon the defendant more than ordinary care and diligence, as mere bailees, and the obligation to deposit them most securely against cold. That it would take longer to do it does not relieve them of the duty. The intensity of the cold created also the obligation of additional vigilance, and what was usual, was not the consideration. What was necessary to be done, under all the circumstances, was the true criterion."

The rule here adopted, that the degree of care and diligence to be exercised by the carrier must be commensurate with the nature of the trust, is salutary and just.

The company, as appears from the evidence, was guilty of the most culpable negligence in transporting the fruit in a car wholly unfit for the purpose, in the winter season. It follows from what we have before said, that the company is liable for loss occasioned by such negligence.

Let the judgment of the court below be affirmed, with costs.

*Affirmed.*