ARTHUR J. GUDE v. PENNSYLVANIA RAILROAD COMPANY.

Argued November 5, 1908—Decided February 23, 1909.

The last of a line of connecting carriers is presumed, in the absence of proof to the contrary, to have received freight in the same condition in which it was delivered to the initial carrier, and if it appears to have been shipped in good order, and is in a damaged condition when the last carrier offers to deliver it, a presumption

arises that the injury resulted from the negligence of the last carrier. But if there be no proof that the freight was in any other condition when it was delivered to either of the preceding carriers, than as found in the hands of the last carrier, the presumption of negligence on the part of the final carrier does not arise, for there must be some proof of a change in condition of the freight between shipment and delivery to warrant the presumption that a different condition exists because of negligence of the carrier.

On appeal from Second District Court of Newark.

Before Justices REED, BERGEN and MINTURN.

For the plaintiff, *William E. Andrew, Jr.*

For the defendant, *Vredenburgh, Wall & Carey.*

The opinion of the court was delivered by

BERGEN, J. The plaintiff recovered a judgment against defendant for damages to goods shipped to him from Brighton, Ohio, and received by the defendant company at Newark, New Jersey, in a damaged condition. To support his case the plaintiff introduced in evidence a freight receipt for transportation charges, which was made out and delivered by the defendant company in Newark, New Jersey, the destination of the shipment. The receipt purported to be in the name of "Union Line," but immediately under these words there was printed "Pennsylvania Railroad Company—Pennsylvania Company." It was signed by the agent of defendant and, among other things, recited that the goods were shipped by the Union line from Dayton, Ohio, and that the original point of shipment was Brighton, Ohio. The plaintiff proved the receipt of the goods by the defendant company in Newark, and that they were then damaged, but there was no proof of its condition when delivered in Ohio for transportation. The defendant moved for a nonsuit, upon the ground that the declaration charged that the goods were shipped over the defendant's road from Cincinnati, and there was no proof that they came into the hands of the defendant company, or were

delivered to it in good condition. The freight receipt was made out by the duly authorized agent of the defendant company, and its truth is not disputed. If the receipt for freight does not warrant the inference that the "Union Line" was managed and controlled by the defendant from Brighton, Ohio, then there was no proof that the goods were originally received by the defendant as the initial carrier, but it is admitted that at some point on the route the goods came into the hands of the defendant, and that it was the last of the connecting carriers. We do not think the receipt is evidence that the defendant was the initial carrier, for it states that the original point of shipment was Brighton, and that it was shipped from Dayton, Ohio, over "C. H. D.," which the case shows, stands for the Chicago, Hamilton and Dayton railroad, by the Union line. The utmost that can be inferred from the receipt is that the defendant received the freight from another carrier at Dayton, Ohio, which had brought it from Brighton.

The rule undoubtedly is that the last of a line of connecting carriers is presumed, in the absence of proof to the contrary, to have received freight in the same condition in which it was delivered to the initial carrier, and if it appears to have been shipped in good order, and is in a damaged condition when the last carrier offers to deliver it, a presumption arises that the injury resulted from the negligence of the last carrier. But if there be no proof that the freight was in any other condition when it was delivered to either of the preceding carriers, than as found in the hands of the last carrier, the presumption of negligence on the part of the final carrier does not arise.

In the present case there was no way-bill or receipt for delivery by the shipper showing the condition of the goods when delivered to the initial carrier, as is usually the case. If there had been, and it stated that the freight was received in good order, it, if offered as evidence, would have been *prima facie* proof of its contents, and, until rebutted, which it may be (*Ellis* v. *Willard,* 9 *N. Y.* (5 *Seld.*) 529), the presumption would be that the goods were delivered by the shipper to the initial carrier in good order, and that they were in that condition when delivered to the successive carriers. But a pre-

sumption must rest upon some proven or admitted fact or facts, and without it appears that the goods were not in a damaged condition when the shipper delivered them to the first carrier, there is nothing upon which to rest a presumption that they were not damaged when delivered by the shipper. There is no reason why goods may not be shipped although damaged, and without proof to the contrary, the presumption that they were, when shipped, in the condition found at their destination, is at least as strong as that they were not. The condition in which they were delivered for shipment is within the knowledge of the shipper, and proof of it readily obtainable, which would not be the situation if the damage happened while passing from one to another of intermediary carriers, and because of the difficulty of showing by which of them the damage was done, the rule was adopted that goods delivered to one carrier in good order are presumed to have come to each successive carrier in like condition.

As there was no proof in this case that the goods were, when shipped, otherwise than as they were at the end of the journey, there can be no presumption that the last carrier received them in any other or different condition, and for this reason the judgment should be reversed.