Argued February 16, decided March 14, rehearing denied June 22, 1911.

## WELLS v. GREAT NORTHERN RY. CO.

[114 Pac. 92: 116 Pac. 1070.]

CARRIERS—FAILURE TO DELIVER GOODS—LIABILITY.

1. A carrier, being an insurer, may not escape liability for nonperformance of the contract of transportation, except by showing that a failure to transport or deliver arose from an act of God or the public enemy, or public authority, or of the shipper, or from the intrinsic nature of the property itself.

CARRIERS—PASSENGERS—LIABILITY FOR BAGGAGE.

2. Where a carrier of passengers sells a ticket to a passenger, and issues to him a baggage check on the delivery to it of the passenger's traveling effects, it impliedly stipulates for the consideration received to transport the personal baggage, and in caring therefor it is governed by the rule governing the liability of carriers of goods.

CARRIERS—LIMITATION OF LIABILITY.

3. A carrier may, by an express contract which is reasonable and just, limit its liability as an insurer of goods intrusted to it for transportation; but it cannot relieve itself from negligence of its agents.

CARRIERS—PERSONAL BAGGAGE.

4. A watchmaker and jeweler may carry as a part of his personal baggage a reasonable quantity of watchmaker's and jeweler's tools, when placed in his trunk for transportation as baggage.

CARRIERS—BAGGAGE—EXTRA BAGGAGE—WAIVER OF RIGHT TO REFUSE TO CARRY.

5. A carrier may waive the right to refuse to transport as baggage anything but the personal effects of a passenger.

CARRIERS—BAGGAGE LOSS—ARTICLES OTHER THAN PERSONAL BAGGAGE.

6. Where a passenger when delivering to the carrier's agent a trunk asserted that it contained property not classified as baggage, the issuing of a check with knowledge of the fact rendered the carrier liable for the loss caused by negligence of its servants.

CARRIERS—PASSENGERS—BAGGAGE—LIMITATION OF LIABILITY.

7. A ticket issued to a person at a reduced rate and limiting liability for baggage to wearing apparel not exceeding $100 in value does not relieve the carrier from accountability for the value of the baggage lost through the negligence of its agents.

CARRIERS—LOSS OF BAGGAGE—BURDEN OF PROOF.

8. A carrier, undertaking pursuant to an express contract limiting liability to carry a passenger's baggage, has the burden of disproving that the negligence of its servants resulted in the loss of the baggage.

NEGLIGENCE—"PROXIMATE CAUSE."

9. "Proximate cause" is any act or omission that immediately produces or fails to prevent the injury, or that which directly puts into operation another agency or force, or interposes an obstacle whereby injury is inflicted that would not have happened except for the negligent act or omission.

NEGLIGENCE—PLEADING—PROXIMATE CAUSE.

10. A complaint, which sets forth the facts constituting the negligent act or omission complained of, and which discloses in logical sequence the facts composing the secondary agency, force, or obstacle, if any, and details the resultant injury and the damages, is sufficient.

CARRIERS—LOSS OF BAGGAGE—COMPLAINT—SUFFICIENCY.

11. A complaint, in an action for the loss of a passenger's baggage by the derailment and burning of a baggage car, and which alleges that the derailment and burning was caused by the negligence of the carrier whose agent was informed of the contents of the baggage before undertaking its transportation, is sufficient.

APPEAL AND ERROR—HARMLESS ERROR—FAILURE TO MAKE FINDINGS.

12. Where the trial court found that a carrier was negligent, and that in consequence thereof a passenger's baggage was destroyed, the failure to find on the issue of the existence of a special contract limiting liability for loss of baggage was immaterial.

CARRIERS—PASSENGERS—LIMITATION OF LIABILITY—BAGGAGE.

13. A stipulation in a contract between a passenger and carrier that the baggage liability was limited to wearing apparel only, not exceeding $100 in value, was not a stipulation of the value of the goods shipped, but limited the liability to $100 in any case.

Carriers—Limitation of Liability—Baggage.

14. Interstate Commerce Act Feb. 4, 1887, c. 104, § 6, 24 Stat. 380 (U. S. Comp. St. 1901, p. 3156), requires railroads to print for public inspection schedules showing the rates and fares and charges for transportation of passengers, and any rules and regulations changing or affecting or determining any such rates or charges. *Held,* that the fact that the schedule filed by a carrier provided that its liability for baggage should be limited to $100 did not limit its liability as against a passenger.

From Multnomah:   Earl C. Bronaugh, Judge.

Statement by Mr. Justice Moore.

This is an action by R. L. Wells against the Great Northern Railway Company, to recover $469.70 as the value of a trunk and its contents, lost by the derailing and burning of a baggage car alleged to have been caused by the negligence of the defendant, whose agent, it is averred, was informed of the contents of the trunk before undertaking its transportation. The answer denied all carelessness in operating the train, and as a partial defense alleged that for a valuable consideration the parties had agreed that in case of loss or injury to plaintiff's baggage a recovery therefor should not exceed $100. The statements of new matter in the answer having been denied in the reply, the cause was tried without a jury, and findings of fact and of law were made conformable to the averments of the complaint, except that the value of the property involved was ascertained to have been only $390.45, for which sum judgment was rendered, and the defendant appeals.      AFFIRMED.

For appellant there was a brief over the names of *Mr. L. C. Gilman, Messrs. Carey & Kerr* and *Mr. Omar C. Spencer,* with an oral argument by *Mr. Spencer.*

For respondent there was a brief and an oral argument by *Mr. John F. Logan.*

Mr. Justice Moore delivered the opinion of the court.

It appears from the bill of exceptions that on April 13, 1907, first-class passenger fare from Chicago, Illinois, to

Portland, Oregon, over the lines of railway hereinafter named was $61.50, on which day plaintiff, for the sum of $33, secured at Chicago a coupon limited "colonist" ticket good for a passage from that city over the line of the Chicago, Burlington & Quincy Railway Company to St. Paul, Minnesota, thence over the line of the defendant, the Great Northern Railway Company, to Spokane, Washington; and thence over the line of the Oregon Railway & Navigation Company to Portland. The ticket contained, *inter alia,* the following clause: "(7) Baggage liability is limited to wearing apparel only, not exceeding $100 in value. I hereby agree to all the conditions of the contract"—which plaintiff signed. Wells testified that when he delivered to the railway agent at Chicago his trunk to be checked he was compelled to pay excess baggage; that, in answer to the inquiry of the baggage-master as to the contents of the trunk, he replied that it consisted of his watchmaker's and jeweler's tools and clothing; that, while making the journey, defendant's train on which he was riding left the track, by reason of spreading rails, and the locomotive and baggage cars were burned, destroying his trunk and its contents; and, that at the time of the derailment the train was running pretty fast. The defendant offered no evidence respecting the cause of the loss. It is maintained by defendant's counsel that, the ticket having been purchased at a reduced rate, the contract limiting the recovery was supported by an adequate consideration, and, such being the case, an error was committed in rendering judgment for more than $100.

1. By the principles of the common law the person who for hire undertook to carry for the public, goods that he customarily transported and which were left with him for that purpose was an insurer and could not escape liability for nonperformance of the contract, except by showing that his failure was occasioned by the act of

God or the public enemy:  Angell, Car. (4 ed.) § 46;
Lawson, Cont. Car. § 127; *Hollister* v. *Nowlen,* 19 Wend.
(N. Y.) 234, 238 (32 Am. Dec. 455).  "The law," says
Lord Chief Justice HOLT in *Coggs* v. *Barnard,* 1 Smith's
Ld. Cas. (Hare & Wallace's Notes) 369, 376, "charges
this person thus intrusted to carry goods, against all
events, but acts of God, and of the enemies of the king.
For, though the force be never so great, as if an irresist-
ible multitude of people should rob him, nevertheless he
is chargeable.  And this is a politic establishment, con-
trived by the policy of the law, for the safety of all
persons, the necessity of whose affairs oblige them to
trust these sorts of persons, that they may be safe in
their ways of dealing; for else these carriers might have
an opportunity of undoing all persons that had any deal-
ings with them, by combining with thieves, etc., and yet
doing it in such a clandestine manner as would not be
possible to be discovered.  And this is the reason the law
is founded upon in that point."

To the original exceptions of the act of God or the
public enemy, courts, in order to meet the reasonable
requirements of a commercial age, have added exemp-
tions from liability of a common carrier when a failure
to transport or deliver goods arose from an act of public
authority, an act of the shipper, or the intrinsic nature
of the property intrusted to it:  Hutchinson, Car. (3 ed.)
§ 265; 6 Am. & Eng. Enc. Law (2 ed.) § 265; 6 Cyc.
377.

2. A carrier of passengers, upon the sale to any person
of a ticket good for a passage by a designated mode of
conveyance from one pleace to another, by issuing to him
a baggage check upon the delivery to it of his traveling
effects, of a specified weight and properly incased, im-
pliedly stipulates for the consideration thus received
also to transport his personal baggage, and in caring for
the receptacle and its contents is governed by the rule

and subject to the exceptions applicable to common car-
riers of goods.    Angell, Car. (4 ed.) § 571; *Woods* v.
*Devin,* 13 Ill. 746, 748 (56 Am. Dec. 483) ; *Chicago R. Co.*
v. *Fahey,* 52 Ill. 81, 83 (4 Am. Rep. 587) ; *Merrill* v.
*Grinnell,* 30 N. Y. 594, 609; *Hannibal Railroad* v. *Swift,*
12 Wall. 262, 273 (20 L. Ed. 423) ; *Orange County Bank*
v. *Brown,* 9 Wend. (N. Y.) 85, 114 (24 Am. Dec. 129).

3. The right of a common carrier by an express con-
tract that is reasonable and just to limit his liability as
an insurer of goods when intrusted to him for transporta-
tion is well recognized:    Lawson, Cont. Car. § 28; *Moore*
v. *Evans,* 14 Barb. (N. Y.) 524; *Normile* v. *Oregon Nav.*
*Co.,* 41 Or. 177 (69 Pac. 928) ; *Laing* v. *Colder,* 8 Pa. 479
(49 Am. Dec. 533) ; *Rose* v. *N. P. Ry. Co.,* 35 Mont. 70
(88 Pac. 767: 119 Am. St. Rep. 836) ; *Gomm* v. *O. R. &*
*N. Co.,* 52 Wash. 685 (101 Pac. 361: 25 L. R. A. (N. S.)
537) ; *York Co.* v. *Central R. R.,* 3 Wall. 107 (18 L. Ed.
170) ; *Bingham* v. *Rogers,* 6 Watts & S. (Pa.) 495 (40
Am. Dec. 581) ; *Atwood* v. *Reliance Transportation Co.,*
9 Watts (Pa.) 87 (34 Am. Dec. 494).    Though a con-
trary rule may exist in England (Lawson, Cont. Car.
§ 25), public policy, in America, inhibits a bailee for hire,
by any special agreement that he can make, to relieve
himself from liability resulting from his negligence, and
as a deduction from this principle it follows that, when
a loss of or injury to goods arises from his carelessness or
that of his agents, a contract attempting to limit liability
in that particular is rendered nugatory:    Angell, Car.
(4 ed.) § 267; Lawson, Cont. Car. § 28; *Railroad Co.* v.
*Lockwood,* 17 Wall. 357, 381 (21 L. Ed. 627) ; *Bank of*
*Kentucky* v. *Adams Express Co.,* 93 U. S. 174, 183 (23
L. Ed. 872).    In *Tewes* v. *North German Lloyd S. S. Co.,*
186 N. Y. 151 (78 N. E. 864: 8 L. R. A. (N. S.) 199: 9
Am. & Eng. Ann. Cas. 909), a different conclusion was
reached; but the dissenting opinion of Mr. Justice HAIGHT
seems to present the better reason.    The notes to that

case show the conflict of authority on the subject under consideration. As illustrating the rule that an agreement endeavoring to exempt a carrier of passengers from liability occurring from its carelessness, it has been held that a railroad pass, given for a consideration, but having printed on the back of the ticket a declaration that the person accepting it assumed all risk of accidents resulting from negligence of the carrier's agents, did not estop the passenger from showing that he was not subject to the conditions undertaken to be imposed: *Railway Co.* v. *Stevens,* 95 U. S. 655 (24 L. Ed. 535). It has been ruled that the liability of a railroad company does not depend on the fact that compensation for the transportation of a passenger has been paid to it, but that the same degree of care is imposed upon the carrier in the case of a person traveling on a free pass as in the case of a passenger paying full fare, and that the negligence of an agent from which injury results fixes upon the carrier a liability which cannot be avoided or limited by express contract: *Gulf R. Co.* v. *McGown,* 65 Tex. 640; *Jacobus* v. *St. Paul R. Co.,* 20 Minn. 125 (Gil. 110: 18 Am. Rep. 360) ; *Yazoo R. Co.* v. *Grant,* 4 Am. & Eng. Ann. Cas. 556. See notes to latter case as to a contrary doctrine.

In *Coward* v. *East Tenn. R. Co.,* 16 Lea (Tenn.) 225 (57 Am. Rep. 227), a ticket was purchased at a reduced rate containing the following clause: "None of the companies represented in this ticket will assume any liability on baggage except for wearing apparel, and then only for a sum not exceeding $100"—which provision, with full understanding thereof, the passenger assented to by appending his signature. Based on the ticket a trunk was checked that did not reach its destination until several hours after the passenger's arrival, and it was then discovered that the lock had been filed, and a watch and chain and a diamond pin had been stolen. In an action to recover the value of the property taken, it was held

that the jewelry was the customary wearing apparel of a lady occupying the station of the passenger, and that the payment of the reduced rate did not absolve the carrier from liability for its own negligence, which consisted in a failure to transport the trunk on the same train with the passenger; the court saying:

"The separation of the passenger and the baggage and their transportation by different trains is nowhere explained."

And a judgment was rendered against the carrier for $1,400, as the value of the property stolen.

4. In the case at bar, the defendant undertook to escape liability for the watchmaker's and jeweler's tools, a reasonable quantity of which, when placed in plaintiff's trunk for transportation, constituted a part of his personal baggage. *Davis* v. *Cayuga R. Co.,* 10 How. Prac. (N. Y.) 330; *Kan. R. Co.* v. *Morrison,* 34 Kan. 502 (9 Pac. 225: 55 Am. Rep. 252) ; *Porter* v. *Hildebrand,* 14 Pa. 129.

5. The defendant was authorized to refuse the transportation of anything but personal effects of a passenger.

6. This was a right, however, which it could waive, and when Wells delivered to its Chicago agent a trunk, and asserted that it contained property not classified as baggage, the issuing of a check with knowledge of the contents rendered the carrier liable for the loss in case the derailing and burning of the car was occasioned by the negligence of its servants. 3 Thomp. Neg. § 3402; *Oakes* v. *N. P. R. Co.,* 20 Or. 392 (26 Pac. 230: 12 L. R. A. 318: 23 Am. St. Rep. 126) ; *Bergstrom* v. *Chicago R. Co.,* 134 Iowa 223 (111 N. W. 818: 10 L. R. A. [N. S.] 1119: 13 Am. & Eng. Ann. Cas. 239).

7. As the principles under which the freedom of contract and private dealings is restricted by law for the good of the community demanded that defendant should exercise due care in transporting baggage, we conclude

that the ticket issued to him at a reduced rate, and the clause attempting to limit liability as to the character and the value of the contents of the trunk, though assented to by him, did not exonerate it from accountability for the loss if it resulted from the negligence of the carrier's agents.

8. The burning of the trunk and its contents in the manner alleged in the complaint having been admitted by the answer, the remaining question to be considered is: Upon whom was cast the burden of proof as to whether or not the loss was caused by the negligence of defendant's servants?

Though a limitation by express agreement may relieve a common carrier of liability for loss of or injury to goods intrusted to him for transportation, except for negligence of his servants, the preponderance of authority in America supports the doctrine that in cases of special contract the burden of proving negligence devolves on the shipper. Lawson, Cont. Car. § 248. In the next section this author observes:

"In Greenleaf on Evidence it is said: 'And, if the acceptance of the goods was special, the burden of proof is still on the carrier to show not only that the cause of the loss was within the terms of the exception, but also that there was on his part no negligence or want of due care.' 2 Green. Ev. § 219. This rule has the support of a few authorities."

As upholding the principle thus announced, attention is called to several decisions, and among them to the case of *Grey's Ex'r* v. *Mobile Trade Co.*, 55 Ala. 387 (28 Am. Rep. 729), in referring to which the text-writer further remarks:

"It and the rule as stated by Mr. Greenleaf are certainly founded upon reason and public policy, but they lack, as has been seen, the support of authority." Lawson, Cont. Car. § 250.

In case of injury to goods the carriage of which has been undertaken pursuant to an express contract made with the owner limiting liability, we believe that, as the common carrier is not a gratuitous bailee, the burden ought to be imposed on him to disprove negligence, which should be presumed from the failure to ship or deliver. This rule would require the proving of a negative; but, as the agents of the carrier must have a better knowledge of the origin and consequences of the loss than any other person, he should be required to show that the damage did not result from negligence. Any other rule would subject the shipper to much expense in attempting to discover the cause of the injury to or loss of his goods, and since this information can readily be supplied by the carrier he ought to be required to disprove negligence. If the burden devolved on the shipper, he might be compelled to rely upon the testimony of servants in the employ of the carrier whose hope of continual engagement might affect their sworn statements. For these reasons we think it was incumbent upon the defendant to show that the derailing and burning of the baggage car did not result from negligence.

9. In actions to recover damages based on carelessness, the proximate cause is any act or omission that immediately produces or fails to prevent the injury, or that which directly puts into operation another agency or force, or interposes an obstacle whereby injury is inflicted that would not have happened except for the original negligent act or omission. 8 Am. & Eng. Enc. Law (2 ed.) 571; 32 Cyc. 745; *Hartvig* v. *N. P. L. Co.*, 19 Or. 522 (25 Pac. 358); *Ahern* v. *Or. Tel. Co.*, 24 Or. 276 (33 Pac. 403: 35 Pac. 549: 22 L. R. A. 635); *Robinson* v. *Taku Fishing Co.*, 42 Or. 537 (71 Pac. 790).

10. When in such an action the complaint sets forth the facts constituting the negligent act or omission, discloses, in logical sequence, the facts composing the sec-

ondary agency, force or obstacle, if any, and details the resultant injury and the damages, the pleading is sufficient.

11. In the case at bar, the complaint does not conform to these requirements, but, as the burden of proof rested on the defendant, a suggestion of negligence in plaintiff's primary pleading was, in our opinion, adequate for that purpose. The defendant, probably relying on the weight of authority respecting the burden of proof, offered no evidence on the question of negligence.

12. Objection is made because the court did not make a finding as to the special contract alleged in the answer and denied by the reply. The finding that defendant was negligent, in consequence of which plaintiff's trunk and its contents were destroyed, renders void the attempted limitation of liability, which conclusion determined the right of recovery, rendering it unnecessary to make any findings on such issue. *Lewis* v. *First Nat. Bank,* 46 Or. 182 (78 Pac. 990) ; *Freeman* v. *Trummer,* 50 Or. 287 (91 Pac. 1077) ; *Naylor* v. *McColloch, Mayor,* 54 Or. 305 (103 Pac. 68).

It follows from these considerations that the judgment should be affirmed, and it is so ordered.

                                                    AFFIRMED.

Decided June 22, 1911.

## ON PETITION FOR REHEARING.

[116 Pac. 1070.]

Opinion PER CURIAM.

In the petition for rehearing, it is urged that the limitation of the liability was based on a special consideration, viz., a reduction in the price of the ticket. But defendant's counsel mistake the terms of the stipulation in the ticket. The reduction of the price of the ticket is not made in consideration of the limitation of the

baggage.  The ticket is in form a first-class ticket.
Whether it is sold as a first or second class ticket is to
be indicated, as the one or the other, by the place it is
punched on the first coupon.  The contract of the ticket
contains seven specifications.  The third one states that,
if sold as a second class, the purchaser is only entitled
to second-class passage, and each of the other six con-
ditions of the ticket apply alike to the holder of the ticket,
whether first or second class; and the seventh condition,
limiting the liability of the baggage, applies to all hold-
ers of the ticket, regardless of the price for which it
was purchased, and has no bearing on the price of the
ticket, other than it may have been considered in fixing
the fare specified in the schedule filed with the Inter-
state Commerce Commission.  But it is held in the case
of *Normile* v. *Oregon Nav. Co.,* 41 Or. 177 (69 Pac. 928) :
"No sort of consideration, whether it is based upon a
different or lower tariff, or whatever it might be, will
therefore exempt the carrier, in whole or in part, from
liability attributable to his own negligence; and, where
such is the essential purpose of the contract, it cannot
be upheld."

13. Defendant also mistakes the effect of the seventh
clause of the contract, limiting the liability of the com-
pany.  It is not a stipulation of the value of the goods
shipped, but limits the liability to $100 in any case, and
is not an agreed value of the goods shipped.  "The bag-
gage liability is limited to wearing apparel only, not
exceeding $100 in value," and the passenger does not
participate in fixing the amount.  He is required to accept
the stipulation on the ticket, or leave his baggage.  This
is conceded in the second brief filed on this motion, where
it is contended that the limitation is fixed by the schedule
of rates filed by the company with the Interstate Com-
merce Commission, and has the force and effect of a law.
Without assenting to that statement, certainly there was
no agreement as to the value of the goods shipped.

Mr. Justice WOLVERTON, in *Normile* v. *Oregon Nav. Co.*, 41 Or. 177 (69 Pac. 928), makes the distinction between an attempt by the carrier to stipulate against liability, regardless of the value, and a stipulation fixing the value of the freight to be carried; and counsel for defendant claim that this case comes within the latter class, but in this he is in error. It is said at page 184 of 41 Or. (69 Pac. 930) : "It is a sound and wholesome doctrine, based upon considerations of public policy and fair dealing, that a common carrier will not be permitted to stipulate against liability for the loss or injury of property intrusted to it for carriage and transportation occasioned by its own negligence. * * Nor can the carrier be permitted to stipulate or contract for partial or limited exemption from liability occasioned by its negligence with any more reason than it may for a total exemption." And, on the other hand, he recognizes that the shipper may agree with the company upon the value of the goods shipped, and be bound thereby, and "if the plaintiff freely, and without restraint—that is, was laboring under no such inequality of conditions, as that he was compelled to enter into the contract, whether he would or not, in order to have his stock carried—executed the contract in question, he is bound by the stipulations as to the value." Here there is no stipulation as to value, but there is an attempt to limit the liability, regardless of value.

14. In the second brief, it is contended that as by the first paragraph of section 6 of the Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 380 [U. S. Comp. St. 1901, p. 3156]), railroads are required to print for public inspection "schedules showing the rates and fares and charges for transportation of passengers and property * * and shall also state separately the terminal charges and any rules and regulations which in any wise change or affect or determine any part of the aggregate

of such aforesaid rates, fares and charges," and by the fifth paragraph of section 6 it must "file with the commission, hereinafter provided for, copies of its schedule of fares, rates and charges which have been established," that, therefore such schedules when filed with the commission are conclusive on the shipper and the carrier, and that as the schedule so filed by the defendant provides that "liability of this company and of other lines over which baggage is checked is limited to $100," therefore both the company and the plaintiff were bound by that limitation. But we do not concur in these views. Rules and regulations affecting the rates are to be printed in the schedule kept by the company for public inspection; but it is the schedules of the rates, fares, and charges that are to be filed with the commission, and cannot be deviated from. There is nothing in the act that authorizes the company to limit its liability against its own negligence, or that makes a statement of limitation of liability in the schedule enforceable by the commission, or binding upon the shipper. In this case neither was it the subject of agreement between the company and the carrier, but was imposed by the company as a condition of the sale of the ticket, and in signing the ticket the plaintiff was laboring under such an inequality of conditions as that he was compelled to enter into the contract, whether he would or not, in order to have his baggage checked. As said in *Normile* v. *Oregon Nav. Co.*: "If the purpose of the contract was merely to place a limit on the amount for which the defendant shall be liable—that is to say, exempt it in any measure from full liability, as respects the value of the property concerned—then clearly, as to any losses resulting from negligence, it cannot be helped (upheld), and this upon the ground that it would not be just and reasonable."

The petition is denied.

AFFIRMED: REHEARING DENIED.