Cunningham, Judge.
The plaintiff brought his action in the district court against the railroad company to recover the value of certain household goods and furniture which he had delivered to the A. T. & S. F. Ry. Co., at Corona, California, for shipment to Boulder, Colorado, said goods having been destroyed by a fire which consumed the depot of the defendant company at Boulder, the fire being the work of an incendiary. In its amended answer, the defendant admits that the goods in question “arrived at Boulder and were unloaded by the defendant at its depot and warehouse in said city on, to wit, the 6th day of August, 1907. The fire which destroyed the goods is admitted to have occurred on the early morning of August 10th, 1907. It appears from the evidence that Mrs. Manatt, the wife of the plaintiff, repeatedly telephoned the company’s agent, before the fire, in order to ascertain whether their goods had arrived. At the request of the agent, she gave the street number where she was stopping, and the *595 number of tbe telephone by which she could be reached. She was advised on each occasion, except the last, which occurred on August 8th, that the goods had not arrived. On August 8th, she was told by the agent that he did not know whether they had arrived or not. On the afternoon of August 9th, preceding the fire, plaintiff called in person on the agent of the company, at the depot, to make inquiry concerning the goods, and was then told that the goods had not arrived. The company appears to have sent a postal card to the plaintiff, dated August 8th, and bearing post office stamp August 9th, 7:30 A. M., but there was no street number on the same. It is therefore apparent that it was known to the company, at and before the last conversation between the plaintiff and the defendant’s agent, that the goods had arrived, at the time of said conversation.
The principal contention between the parties is as to the binding effect of a certain shipping contract, prepared by an agent of the Atchison, Topeka and Santa Fe Railway • Company, at Corona, California, and signed by the plaintiff at the time of the delivery of the goods to the Santa Fe Company for shipment. The pertinent clauses in said contract read as follows:
“When the words ‘Owner’s Risk’ or the letters ‘O. R.’ are noted on this Bill of Lading, the shipper assumes the risk of all loss or damage to the property in the course of transportation, and in any event not to exceed the declared value hereon stated, if any.
When this bill of lading bears a notation showing that the valuation of the freight is released to *596 any amount, it is agreed that the value of the freight does not exceed such amount, and that any carrier which may be liable for loss or damage of the freight shall not be bound to pay more than such amount.
Corona Station, July 1, 1907.
Whereas, The undersigned Consignor has delivered for transportation to THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY, Coast Lines, at the above station, a quantity of household goods, furniture and emigrants’ movables, consigned to Gr. J. Manatt, Boulder, Colorado, described as follows:
17 pieces of II. H. Gloods.
Prepaid $82.00.
Whereas, Said Consignor desires to secure the benefit of the lower or special rate applicable only to such transportation at “Owner’s Risk” upon the valuation and conditions hereinafter expressed:
Now, therefore, said Railway Company agrees to charge for such transportation the lower or special rate applicable, to shipments based on such valuation, and the conditions hereinafter stated and receives said goods for transportation upon the terms hereinafter stated; and said Consignor hereby represents and agrees that the value of the above property does not exceed Five Dpllars ($5.00) per hundred pounds, and that in case of any loss of or damage to the same, said Railway Company, or any connecting carrier transportating the same, shall not be liable for a greater amount.
When the above class of goods is shipped at the rate based on the valuation of Five Dollars ($5.00) per hundred pounds Agents will read the *597 agreement to the Consignor before requiring him to sign the same and must then note on the way bill ‘‘Beleased to valuation of $5.00 per 100 pounds.” Should the shipper refuse to sign the above contract, you will notify him that in such case the property will be received and forwarded only at the increased rates provided by the classification rules and regulations in effect at the time of the shipment, and applicable to “Carrier’s risk.”
The contract containing the aforesaid clauses, among many others, bore the signatures of the Atchison, Topeka and Santa Pe Bailway Company, Coast Lines, by W. L. Brown, its agent, and J. G-. Manatt, consignor. Immediately preceding these signatures appears the following clause in the contract :
“By signing this agreement, consignor hereby conclusively admits having read, and fully understanding, the foregoing provisions.”
One witness called by defendant, Mr. Prank P. Adams, chief clerk of the general freight office of the Colorado and Southern Bailroad Company, testified :
“The rate on household goods from Corona, California, to Boulder, Colorado, where the liability is limited to $5.00 per cwt. in case of loss or damage, and so receipted for was $3.00 per cwt., and where the valuation was not so released, that the rate was $4.50 per cwt.”
Aside from this witness, the only evidence offered by defendant was the deposition of "W. L. Brown, the agent at Corona, California. Prom this deposition, it- appears that one H. II. Libby, a clerk of the defendant company working under the de *598 ponent, Brown, executed the bill of lading for the company, and that Brown had no personal knowledge of what occurred between the plaintiff and Libby at the time of the execution of the contract in question. Libby gave no testimony. Manatt testified that at the time he delivered the goods, and the contract in question was made up by the clerk at Corona, the agent quoted him a rate of $3.00; that no conversation whatever took place between himself and the company’s agent, as to the value of the property, and that he, Manatt, made no statement whatever concerning its value. This testimony given by Manatt is in no manner contradicted.
1. It seems to be admitted by both parties that the weight of the goods was 2,400 pounds, and the freight paid by plaintiff was $82.00. Prom this it would appear that plaintiff did not receive the benefit of the $3.00 rate, but, on the contrary, paid a rate of $3.41 2-3 per hundred weight. Therefore, even if we assume that defendant’s contention that a contract such as we have here under consideration may be legally made and entered into, and that the same is binding upon the shipper, it can not be enforced against plaintiff in this case because of defendant’s non-observance of it in the matter of the freight rate.
2. We think that the contract entered into between the parties whereby the railroad company attempted to limit its liability to $5.00 per hundred weight, or to a maximum sum of $120.00, is, under the circumstances of this case as disclosed by the evidence, and under the adjudications in this state, to which we shall later call attention, invalid and unenforcible. In the shipment of goods was a piano. *599 This fact was known to the company by the schedule or the description furnished it. The evidence that the goods were worth the amount of the judgment rendered in this case, to wit, $937.80, was undisputed. It appears that plaintiff furnished defendant, prior to trial, a bill of particulars, in which this aggregate value was stated. Hence defendant had ample opportunity to offer proof to reduce the value, had it desired so to do.
3. The failure of the agent of the company at Boulder to deliver the goods on demand, after its agent knew of their arrival, was gross negligence. Practically every question urged by the defendant in this case with reference to the- validity of the contract was present in the case of Union Pacific Railway Co. v. Stupeck, 50 Colo., 151. The leading case relied on by counsel for the railroad company in this case is that of Hart v. Pennsylvania R. R. Co., 112 U. S., 331. The Stupeck case was argued with ability and at great length in the supreme court. Attorneys for the railroad company in that case filed three briefs on the main hearing, and an exhaustive brief on.the petition for rehearing. The Hart case was called to the attention of the court, and quoted from at length by counsel for the Union Pacific Company. The supreme court in the Stupeck case distinguishes the Hart case, and cites with approval the case of Railroad, Company v. Murphey, 113 Ga., 514; 38 S. W., 390. Counsel for appellant in the case at bar say, in their brief: “We concede, therefore, that Illinois and Georgia are against the rule established in the Hart case.” In the Stu-peck case the supreme court cites with approval *600 .three cases from Georgia. In the case of Esties v. D. & R. G. R. R. Co., 49 Colo., 378, it is held that:
“It is settled beyond controversy, based upon the ground of public policy, that a railroad company, being a common carrier, cannot by contract relieve itself from liability for its own negligence.”
In the Esties opinion the case of Nichol v. Eastern Tenn. etc. Co., 15 S. E., 309, a Georgia case, and Coles v. Louisville, etc., Co., 41 Ill. App., 607, are cited with approval, from which it would appear that our supreme court has irrevocably adopted the rule followed in Illinois and Georgia, which counsel for appellant concede is against their contention. In Railroad Company v. Rainey, 19 Colo., 230, and Transportation Co. v. Cornforth, 3 Colo., 280, it is held that a common carrier cannot divest himself of liability for negligence or misfeasance. In their brief, counsel for appellant, in the case at bar, in considering the case of Moulton v. Railway Company, 31 Minn., 86, say:
“This case is practically overruled by the later case of Alair v. Railway Company, 53 Minn., 160, and Douglas v. Transfer Company, 62 Minn., 288.”
However this may be, it is enough to say that the Moulton case is cited with approval by our own supreme court in the Rainey case, and the doctrine in the Rainey case has, as we see, been reaffirmed in the 49th and 50th Colorado, in the Esties and Stupeck cases. In the case of Carr v. Shaeffer, 15 Colo., 55, the following language is used:
“As we have seen, the goods were shipped at the owner’s risk of freezing. This, however, does not relieve the carrier from loss resulting from his own negligence. The law will not permit a common *601 carrier to contract against liability for his own negligence, or that of his servants and employes.”
In support of this announcement, the supreme court in the Carr case, cite Railway Company v. Wilcox, 84 Ill., 239.
The rule invoked by plaintiff in this case-was announced in this state in the following language:
“With a zealous eye the law keeps vigil over the public weal, and will not permit a carrier to enter into a contract which will exempt him from liability so far as his duty is of a public character. No special notice brought home to the customer can relieve, no contract can exonerate a common carrier from the consequences of his failure to exercise that degree of diligence to which he is bound by the nature of his employment. * * * While by special agreement he may excuse himself for accidental losses he will, nevertheless, continue responsible for all damages occasioned by negligence or malfeasance in him or his servants. * # * The doctrine that a common carrier can not, therefore, divest himself of liability, .either by special contract or notice, where damage or loss results from his fraud, negligence or misfeasance, may now be considered as well established in this country.”
Citing Berry v. Cooper, 28 Ga., 543.
The above quotation is from the case of Merchants Dispatch, etc., Co. v. Cornforth, 3 Colo., 280. It would, therefore, appear that our supreme court adopted the Georgia rule as early as 1887. In Milton v. D. & R. G. R. R. Co., 1 Colo. App., 307, the facts involved were strikingly similar to those under consideration in the present case. The goods in the Milton case were being held by the company be *602 cause of a difference over the rate that should be charged, and while being so held, they were damaged by freezing. In the case at bar, the goods were being held through sheer negligence of the railway company,' and after repeated demands or inquiries by plaintiff, and while being so held, they were destroyed by fire. Counsel contend that they were not responsible for the setting out of the fire in this case, and apparently their contention on this point is correct, but, no more was the railroad company responsible for the low temperature which occasioned the damage in the Milton case. The contract in the Milton case, under which the railroad company sought to escape liability, provided against all damages sustained from any other causes than derailment and collision. In that case it is said:-
“Whatever the contract may be, it is impossible for the carrier, by his agreement, to escape responsibility from any loss which may result from his negligence or the malfeasance of the railroad company’s employes.”
In the Milton case it was ruled that the proximate cause of the damage was not the frost, which destroyed the goods, but the negligence of the company in failing to deliver the goods at a time before the temperature fell to the danger point, as it might have done. The shipment in the Milton case was held three days — precisely the length of time that the shipment in this case was held. In the case at bsir, the proximate cause of the loss was not the fire, but the negligence of the company in failing to deliver the goods, as it might well and should have done, prior to the fire.
*603 Onr conclusions, from the facts, and the law as announced in this state, are:
1. That the value of the goods was never determined, except in the most arbitrary possible way, without knowledge, investigation, or inquiry.
2. That the plaintiff was not given the rate to which he was entitled under the contract, even conceding that the contract was an enforcible one.
3. The damage sustained by the plaintiff was due to gross negligence on the part of the agents of appellant, and such negligence the law does not permit it to contract against.
The errors assigned by the appellant on the introduction of evidence and the giving and refusing of instructions are, we think, without merit, in view of the established rule in this state with reference to the contract in question. It was the. duty of the trial court, under the evidence, as a matter of law, to disregard the exemption or limitation clause of the shipping contract, and it was warranted in determining, as a matter of law, under the undisputed evidence, that the goods were of the value returned by the jury, and that the defendant had been guilty of negligence.
Appellant contends that a distinction should be drawn between those cases where the railroad company contracts against all liability, and in the case at bar, where the liability as fixed by the contract was a limited one. It is not donbted that carriers may, where proper methods of valuation are pursued, and the valuation as fixed bears some reasonable relation to the actual value of the articles it undertakes to transport, limit their liability, but the facts developed on the trial, and to which we have *604 called attention, do not bring this case within the rule for which, appellant contends.
Decided March 11, A. D. 1912.
Rehearing denied April 8, A. D. 1912.
Therefore, the judgment of the trial court is affirmed.

Affirmed.