Argued December 11, 1912; decided January 7, 1913.

## LACEY *v.* O. R. & N. CO.*

(128 Pac. 999.)

**Carriers—Liability of Terminal Carrier—Presumptions—Burden of Proof.**

1. Where an initial carrier receives for through shipment goods in good condition, and the terminal carrier delivers them in bad condition, the presumption, in the absence of any evidence to the contrary, is that the injury to the goods occurred while in possession of the terminal carrier, and, to escape liability, it has the burden of showing that it delivered the goods in the same condition in which they were when received by it.

**Carriers—Carriage of Freight—Liability.**

2. A carrier is a practical insurer of freight received for transportation against all losses except those arising from an act of God, the public enemy, the public authorities, the act of the shipper, and the inherent nature of the goods, and, regardless of any contractual exceptions, proof of the carrier's negligence is immaterial, where a loss is not due to the excepted cases.

**Carriers—Terminal Carrier—Liability.**

3. In an action against a connecting and terminal carrier for loss of or injury to freight, evidence held not to show that the connecting carrier did not receive the freight from the initial carrier contracting for a through shipment.

**Carriers—Contract of Shipment—Limited Liability.**

4. A carrier may limit its liability as an insurer of freight received for transportation by express contract fairly entered into and reasonable and just.

**Carriers—Transportation of Freight—Contract Limiting Common-Law Liability—Burden of Proof.**

5. A carrier relying on a special contract restricting its common-law liability must allege and prove the special contract.

---

*The general question of the liability of a connecting carrier for loss beyond its own line is discussed in an elaborate note in 31 L. R. A. (N. S.) 1.

Limiting valuation of property as affecting amount of recovery for loss by negligence, see note in 1 L. R. A. (N. S.) 985.          REPORTER.

**Carriers—Contract Limiting Liability—Validity.**

6. A contract limiting the liability of a carrier in the transportation of freight in consideration of a reduced rate is not enforceable against the shipper, unless he received the benefit of the reduced rate.

**Carriers—Contract Lmiting Liability—Validity.**

7. Where a shipper did not obtain the advantage of a reduced rate, and the arbitrary amount of the value of the property in case of loss had no relation to the value of the freight, but was merely an attempted partial release of the liability of the carrier, and the carrier and the shipper did not agree on the question of value, the value named in the contract of shipment was not binding on the shipper.

**Carriers—Carriage of Freight—Intermediate Carrier—Liability.**

8. The liability of an intermediate carrier in a through shipment where an injury to the freight occurs on its line is not affected by the fact that the initial carrier is also liable.

**Carrieis—Injury to Freight—Actions—Parties.**

9. Where an intermediate carrier is sued for injury to freight occurring on its line, it cannot complain because the initial carrier also liable is not made a party defendant.

**Appeal and Error—Disposition of Case on Appeal.**

10. Where all the evidence is in the record, and that relating to the amount of the damages demanded is uncontroverted, the court, reversing the judgment for defendants, must, as required by Section 3, Article VII, of the Constitution, as amended by Laws 1911, p. 7, remand, with directions to enter a judgment for plaintiff for the damages demanded.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Statement by MR. JUSTICE BEAN.

This is an action by S. W. Lacey against The Oregon Railroad & Navigation Company, a corporation, The Oregon Short Line Railroad Company, a corporation, and The Denver & Rio Grande Railroad Company, a corporation, to recover $292.50, damages for loss of and injury to personal property caused by the alleged negligence of the defendants in transporting the goods as common car-

riers from Telluride, Colorado, to Portland, Oregon, and failure to deliver the same to plaintiff. The trial court directed a verdict in favor of defendants, and plaintiff appeals. It appears that on September 20, 1910, plaintiff delivered to the Rio Grande Southern Railroad Company, at its station at Telluride, Colorado, one sewing machine (crated), one trunk of tools (crated), one box of books, and one box of household goods, to be shipped by way of Salt Lake City, Utah, to Portland, Oregon, prepaying the freight, which amounted to $29.85, to destination. This shipment was routed over the line of the Rio Grande Southern Railroad Company from Telluride, Colorado, to Ridgeway, Colorado; thence over the line of the Denver & Rio Grande Railroad Company to Sale Lake City, Utah, continuing over the Oregon Short Line Railroad to Huntington, Oregon; and thence over the line of the Oregon Railroad & Navigation Company to Portland, Oregon. When the shipment arrived in Portland, the trunk of tools was missing, and the box of household goods was broken and several articles lacking. Plaintiff alleges that the defendants carelessly and negligently lost the trunk of tools and permitted the box of household goods to be opened, its contents rifled, and a part taken therefrom. This action was brought against the Oregon Railroad & Navigation Company, a corporation, the Oregon Short Line Railroad Company, a corporation, and the Denver & Rio Grande Railroad Company, a corporation. On motion of counsel for the Denver & Rio Grande Railroad Company, the service of summons and complaint upon that defendant was quashed, and the other defendants answered. At the close of plaintiff's case, the answering defendants interposed a motion for a nonsuit, which was denied by the court. Testimony was introduced by the defendants, after which they moved for a directed verdict upon several different grounds, among them, the following: (1) That there was no evidence that the goods

were injured or destroyed through any negligence of the answering defendants; (2) that whatever presumption, if any, existed, to the effect that the goods in controversy were received by the Oregon Railroad & Navigation Company, was overcome by the testimony, which is uncontroverted, that a shortage occurred at Salt Lake City, before the goods were delivered to either of these defendants; (3) that the plaintiff's remedy is an action against the initial carrier; (4) that the goods were moved under the terms of a written limited liability bill of lading.

REVERSED.

For appellant there was a brief over the names of *Messrs. Kimball & Ringo,* with an oral argument by *Mr. E. R. Ringo.*

For respondents there was a brief over the names of *Mr. William W. Cotton, Mr. P. L. Williams, Mr. Arthur C. Spencer, Mr. W. A. Robbins,* and *Mr. F. H. Drake,* with an oral argument by *Mr. Robbins.*

MR. JUSTICE BEAN delivered the opinion of the court.

The evidence tends to show that the plaintiff delivered the goods to the Rio Grande Southern Railroad Company, the initial carrier, in good condition, and that the Oregon Railroad & Navigation Company, the delivering carrier, failed to turn over the trunk of tools and a portion of the household goods, and that a part thereof were surrendered in a damaged condition. The evidence on the part of plaintiff that the value of the articles lost and the damages amount to $256.50 is undisputed. Plaintiff contends that the burden devolved upon the defendants to show that the loss and damage did not occur on their lines of railway on account of their negligence.

Alma J. Horspool, check clerk for the Oregon Short Line Railroad Company, at Salt Lake, witness for defendants, testified to the effect that about October 17, 1910,

he received a shipment from the Denver & Rio Grande Railroad Company, consigned to S. W. Lacey, Portland, Oregon, consisting of one sewing machine, a box of books, and a box of household goods; that he never received more than that; that he checked the freight out of a Missouri Pacific box car No. 22367, and that the same was forwarded to Portland in a Union Pacific car, No. 66038; that the car from which the goods were taken did not contain the trunk of tools. On the duplicate waybill for shipment over the Oregon Short Line Railroad, the item, "1 trunk tools," was checked in the handwriting of Horspool, " $\#$ Short at S. Lake, O. S. L." This witness stated in his deposition that the cross meant that the package was following.

1. The defendants base their contention that the goods were never received by them upon the testimony of Mr. Horspool. There is practically no controversy between the learned counsel for plaintiff and defendants as to the law of the case. Counsel for plaintiff tersely state the rule of law that a presumption that loss or damage has occurred on the line of a connecting carrier arises when the plaintiff shows by the evidence the following facts:

"First, that the lines are in fact connecting carriers, and operate as one continuous line; second, delivery to the initial carrier in good condition; third, delivery in bad condition by the terminal line."

Defendants contend that the case at bar does not fall within this rule (1) because there is no evidence or attempt to prove that the railroad lines mentioned are in fact connecting carriers and constitute a through route; (2) because there is no evidence in the case that the goods were ever delivered to the Oregon Short Line Railroad Company, or to the Oregon Railroad & Navigation Company, and therefore there could be no presumption that the same were delivered to the defendants in good condition.

As to the first ground of contention: It is admitted in the answer that the four railroad companies are connecting carriers, and no evidence of that fact is necessary. It would seem that the receipt of the goods by the Rio Grande Southern Railroad Company at Telluride, Colorado, for shipment to Portland, Oregon, the payment of freight therefor, together with the fact that these goods were transported over these lines, and a portion received by plaintiff from the Oregon Railroad & Navigation Company at Portland, would show *prima facie* that these several railroads were for the purpose of the shipment in question operated as one continuous line. It is admitted that the goods were received by the Rio Grande Southern Railroad Company for transportation, and the evidence discloses that they were shipped in good condition and a portion thereof received by plaintiff from the Oregon Railroad & Navigation Company. In the absence of evidence to the contrary, it is presumed that the ordinary course of business has been followed, and that all of the goods were forwarded by the Rio Grande Southern Railroad Company, the initial carrier, and received by defendants in the same condition in which they were delivered at Telluride, Colorado. Section 799, subd. 20, L. O. L.; *Savannah, F. & W. Ry. Co. v. Harris*, 26 Fla. 148 (7 South. 544: 23 Am. St. Rep. 551). In *Gude v. Pennsylvania R. Co.*, 77 N. J. Law, 391, at page 393 (71 Atl. 1128, at page 1129), the court states the rule thus:

"The rule undoubtedly is that the last of a line of connecting carriers is presumed, in the absence of proof to the contrary, to have received freight in the same condition in which it was delivered to the initial carrier, and if it appears to have been shipped in good order, and is in a damaged condition when the last carrier offers to deliver it, a presumption arises that the injury resulted from the negligence of the last carrier; but, if there be no proof that the freight was in any other condition

when it was delivered to either of the preceding carriers than as found in the hands of the last carrier, the presumption of negligence on the part of the final carrier does not arise."

The responsibility of connecting carriers for loss or injury to goods in transit is based upon a presumption that the goods, having been received by the initial carrier in good condition, have been transmitted in good order and delivered to every succeeding carrier along the line; the presumption being necessary to preserve the shipper's rights, since the carrier and not he has control of the goods. *Sheble* v. *Oregon R. & Nav. Co.,* 51 Wash. 359 (98 Pac. 745, 746). In the case of a mere injury to the goods, no failure to deliver being shown, if the last carrier is sued for the damage resulting from the injury, the burden of proof will be upon it to show that the goods were delivered by it in the same condition in which they were received by it, the presumption being that the goods remained in the same state when delivered to it as when originally shipped. And the same rules would apply where any intermediate carrier was sued for the injury. 6 Am. & Eng. Enc. Law (2 ed.), pp. 651, 652. The rule rests upon the recognized principle in the law of evidence by which the burden of proof of a negative averment is cast upon a party purely because of his better ability to adduce proof on the subject. 6 Am. & Eng. Enc. Law (2 ed.), p. 653.

2. The liability of the common carrier by law is an unusual and extraordinary one, based upon considerations of public policy which have survived the wonderful change in the circumstances under which they first arose. The common carrier is regarded as a practical insurer of the goods against all losses of whatever kind with the exception of (1) those arising from what is known as the act of God, and (2) those caused by the public enemy, to which in modern times have been added (3) those

arising from the act of the public authority, (4) those arising from the act of the shipper, and (5) those arising from the inherent nature of the goods: 1 Hutchinson Carriers (3 ed.), Section 265. Regardless of any contractual exceptions, where the loss is not due to the excepted cases, proof of negligence is immaterial. 6 Cyc. 376. The weight of authority seems to be in support of the general proposition that, if the goods are delivered by the last carrier in damaged condition, the presumption arises without further evidence that the damage occurred while in the possession of the last carrier, and that the burden is upon him to prove that they were in the damaged condition when received by him, the double presumption being entertained that they were accepted in good condition by the first carrier, and that such good condition continued until their receipt by the last carrier, notwithstanding transportation over intermediate lines. 6 Cyc. 491. Therefore the burden of showing an excuse for not delivering the goods in good condition devolved upon the answering defendants. *Walter* v. *Alabama Great So. R. Co.*, 142 Ala. 474 (39 South. 87); *So. Ry. Co.* v. *Nailon*, 7 Ga. App. 430 (67 S. E. 116); *Gulf, C. & S. F. Ry. Co.* v. *Jones*, 1 Ind. T., 354 (37 S. W. 208). The defendants assumed this burden, and attempted to show that the goods were not all delivered by the Denver & Rio Grande Railroad Company to the Oregon Short Line Railroad Company at Salt Lake, but failed. This rule would seem to require that the delivering carrier in case of lost articles trace up the same.

3. The only testimony in regard to this is that of Alma J. Horspool, which is simply to the effect that the trunk of tools did not arrive in the Missouri Pacific car No. 22367; that this part of the shipment was checked as being short at that time, which checking he explained to mean "is following." There is an entire want of evi-

dence to show that the trunk of tools was not shipped immediately thereafter, and delivered to the Oregon Short Line Railroad Company. It would not be a strange incident for one crate of the shipment to be shipped in a different car from the remainder. This might occur on account of the car being full, without the same, or by oversight, or in various ways. The testimony of Mr. Horspool indicates that the box of household goods was transferred at Salt Lake in good condition. It does not appear what became of the trunk of tools and the lost articles of household goods.

4. In defendants' answer it is alleged, and it is claimed that the evidence shows, that the goods were moved under the terms of a written limited liability bill of lading. The right of a common carrier by an express contract that is fairly entered into and is reasonable and just to limit his liability as an insurer of goods, when intrusted to him for transportation, is well recognized. *Wells* v. *Great Northern Ry. Co.*, 59 Or. 165 (114 Pac. 92: 116 Pac. 1070: 34 L. R. A. [N. S.] 818).

5. If there is a special contract restricting the common-law liability of the carrier, it devolves upon the carrier to allege and prove it. *Normile* v. *Oregon Nav. Co.*, 41 Or. 177, 181 (69 Pac. 928).

6, 7. The memorandum of the original bill of lading, a copy of which was issued to shipper S. W. Lacey, had the words, "O Rel $10.00 per cwt," written thereon, after the list of the goods. The bill of lading was signed by S. W. Lacey. Mr. S. J. H. French was called by the defendants as an expert on railroad tariffs and business. He interpreted the above words to mean "Owners risk, released to value $10.00 per hundred pounds." Mr. S. W. Lacey, plaintiff, testified that at the time of shipping the goods his attention was not called to these letters and figures, and nothing was said to explain the same. No other testimony was offered concerning the circum-

stances of the shipment. Mr. French further testified that the so-called released rate on this class of freight from Telluride, Colorado, to Portland, Oregon, was $3.50 per hundredweight. At this rate, the charge on the shipment in question, which weighed 690 pounds, would amount to $24.15. The nonreleased rate was 1½ that of the released rate, or 50 per cent more, which would be $5.25 per hundredweight, making the charge on 690 pounds $36.23. Plaintiff paid $29.85, or $4.32 6-10 per hundredweight, which is claimed by the expert to be an overcharge of $5.70 on the shipment. The straight bill of lading used in the matter of the shipment provides, among other things, the following:

"The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property (being the bona fide invoice price, if any, to the consignee, including the freight charges, if prepaid) at the place and time of shipment under this bill of lading, unless a lower value has been represented in writing by the shipper or has been agreed upon or is determined by the classification or tariffs upon which the rate is based, in any of which events such lower value shall be the maximum amount to govern such computation, whether or not such loss or damage occurs from negligence."

And the bill of lading further provides:

"It is mutually agreed, as to each carrier of all or any of said property over all or any portion of said route to destination, and as to each party at any time interested in all or any of said property, that every service to be performed hereunder shall be subject to all the conditions, whether printed or written, herein contained (including conditions on back thereof) and which are agreed to by the shipper and accepted for himself and his assigns."

It is claimed by defendants that the terms of this bill of lading governed the shipment; that the shipper selected the lesser rate, and is bound by the conditions

of the classification or tariffs; that the value of the portion of shipment lost, which weighed 185 pounds, at $10 per hundredweight, would be $18.50. Where a contract of shipment is entered into between a common carrier and a shipper at a reduced rate, based upon a released valuation of freight at $10 per hundredweight, in order that the same may be enforced against the shipper, he must have had the benefit of such reduced rate. *Colorado & S. Ry. Co.* v. *Manatt,* 21 Colo. App. 593 (121 Pac. 1012). The expert's testimony that the rate charged plaintiff for shipping the goods in question was intended to be the lesser rate, based upon a released valuation, is a mere conjecture. Mr. French knew nothing about the transaction between plaintiff and the agent at Telluride relating to the carriage of the goods, except as appeared on the bill of lading. The agent at Telluride did not testify. The amount charged, as indicated by the bill of lading, may as well be deemed an undercharge of the maximum rate as an overcharge of the lesser rate. The plaintiff did not obtain the advantage of the lesser or released rate. The evidence of Lacey, which is uncontradicted, as to the contract whereby the liability of the railroad companies was attempted to be limited, does not disclose that a selection of rate or an agreement was made by plaintiff with full freedom of choice. The arbitrary amount fixed at $10 per hundredweight, in case of loss appears to have had no relation to the value of the goods, but was merely an attempted partial release of the liability of the carrier. The minds of the parties do not appear to have met on the question of the value of the goods. According to the evidence, the sum named cannot be said to be a just or reasonable value of the property. *Wells* v. *Great Northern Ry. Co.,* 59 Or. 165 (114 Pac. 92: 116 Pac. 1070: 34 L. R. A. [N. S.] 818); *Ostroot* v. *Northern Pac. Ry. Co.,* 111 Minn. 504 (127 N. W. 177); *St. Louis, I. M. & S. R. Co.* v. *Pape* (Ark.),

140 S. W. 265. The trial court erred in directing a verdict in favor of defendants.

8. The liability of an intermediate carrier, where an injury to the goods occurs on its line, is not affected by the fact that the initial carrier is also liable. 6 Am. & Eng. Enc. Law (2 ed.), p. 625.

9. And such intermediate carrier cannot complain because the initial carrier is not made a party defendant. *San Antonio & A. P. Ry. Co.* v. *Moore* (Tex. Civ. App.), 39 S. W. 960. It appears from defendants' brief that the Oregon Short Line Railroad Company and the Oregon Railroad & Navigation Company were operated under the same ownership.

10. It follows that the judgment of the lower court must be reversed. The evidence being all contained in the record, and that relating to the amount of damages being uncontroverted, according to the mandate contained in Article VII, Section 3, of the constitution, as amended by Laws 1911, p. 7, this cause will be remanded, with directions to enter a judgment in favor of plaintiff for the sum of $256.50.                    REVERSED.